567 A.2d 1385

**NORTHWOOD NURSING AND CONVALESCENT HOME, INC., Appellant,**

**v.**

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF PUBLIC WELFARE, Appellee.**

Supreme Court of Pennsylvania.

Argued April 10, 1989.

Decided Dec. 27, 1989.

Arlen M. Tompkins, Philadelphia, for appellant.

Bruce G. Baron, Asst. Counsel, Dept. of Public Welfare, Harrisburg, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

This is an appeal from the order of Commonwealth Court, 10 Pa.Cmwlth. 40, 531 A.2d 873, which affirmed an order of the Department of Public Welfare (DPW) involving a question of cost accounting for skilled nursing care facilities under the Pennsylvania Medical Assistance Program (Medicaid). The appellant argues that DPW incorrectly interpreted the regulations and guidelines governing cost accounting and erroneously attributed to appellant a proportional share of the interest income of its parent corporation, thus reducing appellant's reimbursable interest expense. We granted allocatur to review what appears to be a lack of uniformity in similar cases previously decided by Commonwealth Court.

Appellant, Northwood Nursing and Convalescent Home, Inc. (Northwood), is a skilled nursing care facility qualified as a care provider under Medicaid. Northwood is a wholly owned subsidiary of Nursecare Health Centers, Inc. (Nursecare), a home office under the medical assistance program which owns and operates Northwood and another nursing home in New Jersey.

Pennsylvania's medical assistance plan[1] is coordinated with, and partially funded by, the federal medical assistance program under Title XIX of the Social Security Act, 42 U.S.C. § 1396 et seq. The plan provides for the reimbursement of skilled nursing care providers on a cost reimbursement basis. Federal[2] and state[3] manuals provide the regulations which govern the program. Where the two manuals

---

1. Section 443.1 of the Public Welfare Code, Act of June 13, 1967, P.L. 31, *as amended*, section 5 of the Act of July 31, 1968, P.L. 904 *as amended*, 62 P.S. § 443.1.

2. Medicare Provider Reimbursement Manual contained in the Health Insurance Manual (HIM–15), 1 Medicare and Medicaid Guide (CCH) par. 4590–5999z–57.

3. Manual for Allowable Cost Reimbursement for Skilled Nursing and Intermediate Care Facilities, printed at 55 Pa.Code §§ 1181.201—1181.274. The manual provisions which were in effect at the dates relevant to this appeal are printed at 8 Pa.Bulletin 2832–38 (1978).

differ, the provisions of the state manual govern the program. 10 Pa.Bulletin 3107 (1980), 55 Pa.Code § 1181.65(d)(1).

The federal manual provides detailed accounting and reimbursement rules for complex organizations. Those rules apply to organizations in which a provider is owned or controlled by a home office or a related party. They are designed to apply whether the separate parts of the organization are separately incorporated or not. The manual provides for a separate cost accounting from each provider. It also provides rules requiring a provider to account for certain transactions by a home office which may properly be allocated to the provider. The state manual is far less detailed in its treatment of cost accounting for complex organizations.

In a routine audit of expense reports, the DPW disallowed Northwood's claimed interest expenses of $15,010 for 1981 and of $14,257 for 1982. The DPW ruled that those expenses must be set off against Northwood's proportional share of Nursecare's net interest income.[4] In both years, Northwood's proportional share of Nursecare's interest income exceeded Northwood's interest expense. Northwood appealed those rulings to the Office of Hearings and Appeals. The hearing examiner found the DPW rulings to be proper; the Office of Hearings and Appeals adopted the hearing examiner's report. On appeal, Commonwealth Court affirmed.

Northwood argues that Commonwealth Court erred in affirming the order of the DPW, claiming that neither the federal manual nor the state manual calls for the set-off of home office interest income against the allowable interest expenses of care providers as a general rule. Northwood

4. The federal manual provides a formula for allocating "home office" expenses and interest income among the "providers" served by the home office. DPW applied that formula and allocated 66.76% of Nursecare's 1981 interest income of $47,912 to Northwood. In 1982 the formula percentage was 57.27% and Nursecare's interest income was $43,985. The parties stipulated to the computation of the percentage allocations and to Nursecare's interest income.

contends that the prior decisions of Commonwealth Court indicate that no set-off should apply in a case like this one.

Only the federal manual dealt with the allocation of home office interest income to the care providers run by the home office. Section 2150.3(E) of the federal manual stated:

> The provider's share of the net amount of home office capital-related interest expense and investment income is subject to offset by the provider's own capital-related investment income and included with the provider's capital-related costs. If the provider's share is a negative amount, it should be added to the provider's capital-related investment income and the combined amount used to reduce the provider's capital-related interest expense.[5]

The state manual contains a limited set-off rule. It provides:

> Interest expense reduced by investment income, except when the investment income is derived from gifts or grants which are restricted by the donor and which are accounted for separately from other funds, will be recognized.

State Manual § IV(D)(10)(e). Northwood correctly points out that the state manual makes no reference to related party or home office investment income. The provision only calls for the set-off of the provider's *own* interest income against its *own* interest expenses. Northwood claims that neither the language of the manuals nor the cases interpreting that language call for the offset of home office interest income against a provider's allowable interest expense if the home office incurs no interest expense specifically allocable to the provider. Three arguments are asserted in support of this position.

First, Northwood argues that the pertinent set-off provision is that of the state manual because it differs from that of the federal manual. We reject this argument. The regulations declare that the provisions of the state manual

---

**5.** (Emphasis deleted from original.) The language of § 2150.3(E) is quoted in the form which was in effect in 1981 and 1982. The section later was redesignated § 2150.3(F).

govern when there is a difference between the state and federal manuals. 55 Pa.Code § 1181.65(d)(1). The context of that regulation, however, makes it clear that *both* manuals are to govern the program, and only when the manuals *conflict* does the regulation come into play to implement the state provision. In this case, the two manuals are not in conflict. The state manual does not address the question presented by this case and is therefore inapposite. The federal manual goes beyond the state manual in providing detailed cost accounting procedures for complex organizations. The state manual being *silent,* the federal provisions apply.

■ Second, Northwood argues that the federal manual offset rule applies only when the home office incurs interest expense which is properly allocable to the provider. This argument is not persuasive. The federal manual provides rules for set-offs in the most complex of situations—where the provider has both interest income and interest expense, and the home office has both interest expense which is allocable to the provider and interest income. The application of the set-off rule is not contingent on the existence of allocable expense at the home office level or interest income at the provider level. Rather, it aims to prevent the charging of needless interest costs to the government by attributing to each provider in a chain its ratable share of the home office investment income. This precludes complex organizations from compartmentalizing income in exempt pockets and interest expense in pockets which allow for interest reimbursement.

Finally, Northwood claims that the decision in this case is inconsistent with Commonwealth Court's prior decisions on the subject of set-offs. Northwood relies primarily on *Chateau Convalescent Center v. Department of Public Welfare,* 90 Pa.Cmwlth. 426, 495 A.2d 659 (1985), and *Tressler Lutheran Service Associates, Inc. v. Department of Public Welfare,* 100 Pa.Cmwlth. 279, 514 A.2d 661 (1986). *Chateau* was a case in which a care provider, Chateau, had borrowed from a company related by common ownership so

that its interest payments on the indebtedness were not an allowable cost according to 42 C.F.R. § 405.419. The issue was whether the interest income to the related party was allocable to Chateau to offset its reimbursable interest on capital indebtedness. Commonwealth Court held that the income to the related party was not allocable to Chateau, stating: "Nowhere in the Manual [for Allowable Cost Reimbursement] is it stated that investment income to a party related to a care provider under the [Medical Assistance] Program is to be deemed income to the provider." *Chateau, supra,* 90 Pa.Cmwlth. at 430, 495 A.2d at 661.

*Tressler* was a case in which a charitable corporation owned and operated five nursing homes. Commonwealth Court required Tressler, the provider in question, to offset its allocable share of the home office investment income against Tressler's interest expense. The court held:

Inasmuch as [the home office] owns and operates each of the facilities in question, the investment income attributable to the [home office] is also attributable to each of the facilities.

We emphasize that here we have one corporation.... The internal operating procedures of the [home office] should not be used to increase reimbursement from the public fisc.

*Tressler, supra,* 100 Pa.Cmwlth. at 292–93, 514 A.2d at 668. *Tressler,* unlike *Chateau,* involved the interpretation of federal regulations as well as state regulations.

To explain the different results in *Tressler* and *Chateau* on the basis of federal regulations or on the differing corporate structures in the two cases, however, would be misleading. *Tressler* reached the correct result and is not dependent on the fact that only one corporation was involved. Had the *Chateau* court applied the federal regulations, it, too, should have required the interest income of the related party to offset the interest expense of Chateau. There is no reason why a different result should occur when separate corporations function in the relationship of home office and care provider; the federal manual does not make

a distinction on the basis of corporate structure. Moreover, such a distinction is inconsistent with the rationale underlying the cost-related reimbursement scheme. That rationale is to require accounting by providers without regard to their legal status as corporate or noncorporate entities, and to apply uniform cost accounting rules for complex organizations without regard to their legal form. It has the effect of preventing the improper public underwriting of private capital investments which might otherwise be accomplished through creative accounting procedures.

In this case, Commonwealth Court properly applied the state and federal regulations governing cost accounting by Medicaid care providers even though it extends the rule in *Tressler* beyond the single-corporate-entity rationale stated therein. We therefore affirm the order of Commonwealth Court.

Order affirmed.