660 A.2d 1312

## WESTERN RESERVE CONVALESCENT HOME OF ERIE, Appellee,

v.

## COMMONWEALTH of Pennsylvania, DEPARTMENT OF PUBLIC WELFARE, Appellant.

Supreme Court of Pennsylvania.

Argued March 7, 1995.

Decided June 19, 1995.

Jeffrey P. Schmoyer, Dept. of Public Welfare, for appellant.

Jack M. Mumford, Duane, Morris & Heckscher, Allen C. Warshaw, Harrisburg, for appellee.

Before NIX, C.J., and FLAHERTY, ZAPPALA, CAPPY, CASTILLE and MONTEMURO, JJ.

## OPINION

ZAPPALA, Justice.

This appeal by the Commonwealth of Pennsylvania, Department of Public Welfare (DPW), raises the issue of whether the DPW is obligated to pay to Appellee, Western Reserve Convalescent Home of Erie (Western Reserve), a participant in the Medical Assistance Program (MA), interest on its underpayment of reimbursement for nursing home services.[1]

On January 1, 1983, Western Reserve sold its long-term nursing care facility and filed its final cost report. The DPW returned the cost report to allow Western Reserve to make corrections. Western Reserve filed a corrected cost report, which the DPW rejected on the grounds that it had been untimely filed under 55 Pa.Code § 1181.73(a). The DPW's

---

1. Section 443.1 of the Public Welfare Code, Act of June 13, 1967, P.L. 31, *as amended*, Section 5 of the Act of July 31, 1968, P.L. 904, *as amended*, 62 P.S. § 443.1.

final settlement was therefore based on the last final per diem rate for which the DPW had audited costs.

Western Reserve appealed the DPW's action, and the DPW's Office of Hearing and Appeals (OHA) denied the appeal. Western Reserve filed a Petition for Review in the Commonwealth Court, which reversed the OHA order and remanded the matter to the DPW for consideration of the final cost report. *Romagni v. DPW*, 96 Pa.Commw. 446, 507 A.2d 1292 (1986). We denied allocatur. *Romagni v. DPW*, 520 Pa. 592, 551 A.2d 218 (1988). Upon remand, the DPW issued a corrected audit report which reflected a $30,175.15 increase in Western Reserve's allowable costs.

Western Reserve appealed the results of the corrected audit to the OHA, claiming entitlement to interest on the additional monies. The Director of the OHA issued an order sustaining Western Reserve's appeal. The Office of Medical Assistance (OMA) requested reconsideration of OHA's decision by the Secretary of the DPW. Reconsideration was granted and the Secretary of the DPW reversed the OHA and ordered that Western Reserve was not entitled to interest on the underpayment.

Western Reserve thereafter filed a Petition for Review with the Commonwealth Court. The Commonwealth Court reversed the DPW's final order and remanded the case to the Secretary of the DPW for calculation of interest on the $30,175.15 underpayment according to federal regulations. We granted allocatur to determine whether Western Reserve is entitled to interest on its underpayment from the DPW.

To resolve the issue, we must examine the regulations which govern Pennsylvania's MA program. The program, which is administered by the DPW, is coordinated with and partially funded by the Federal Medical Assistance Program under Title XIX of the Social Security Act, 42 U.S.C. §§ 1396 et seq. The MA program provides for reimbursement to skilled nursing care providers on an allowable cost reimbursement basis.

Regulations governing the program are set forth in both federal[2] and state[3] manuals.

The state manual is silent as to whether interest must be added to underpayments on reimbursement of allowable operating costs. The federal manual, however, HIM–15 § 2928(b), provides for interest to be awarded in certain circumstances:

B. *Interest on Amount Subject to Court Review.*—A provider of services dissatisfied with the hearing decision of the Board (§ 2926 [¶ 7723] ) or, if applicable with the subsequent affirmation, modification, or reversal of that hearing decision by the Administrator (§ 2927 [¶ 7724] ) may appeal the final administrative decision to the Federal courts. Where a provider seeks judicial review of such final administrative decision, the amount in controversy shall be subject to annual interest beginning on the first day of the first month beginning after the 180–day filing period and equal to the rate of return on equity capital established by regulation pursuant to section 1861(v)(1)(B) and in effect at the time the civil action is commenced, to be awarded by the reviewing court in favor of the prevailing party. The interest awarded shall not be deemed income or cost for the purposes of determining payment due providers under the Medicare program.

To determine which manual to apply, the lower court relied on the following provision of the state manual:

(d) Allowable operating costs for a general nursing facility including hospital-based and special rehabilitation facilities, shall be determined subject to the following:

(1) The Department's Manual for Allowable Cost Reimbursement for Skilled Nursing and Intermediate Care Facilities.

**2.** Medicare Provider Reimbursement Manual contained in the Health Insurance Manual (HIM–15), 1 Medicare and Medicaid Guide (CCH) par. 4590–5999z–57.

**3.** Manual for Allowable Cost Reimbursement for Skilled Nursing and Intermediate Care Facilities, printed at 55 Pa.Code §§ 1181.201–1181.274.

(2) *The HIM–15, except that if the Department's Manual and the HIM–15 differ, the Department's Manual applies.*

(3) The MSA or non-MSA group ceilings if applicable. 55 Pa.Code § 1181.65(d) (emphasis added).

Thus, when a conflict as to allowable operating costs arises between the two manuals, the state manual controls. We decided in *Northwood Nursing and Convalescent Home v. Department of Public Welfare,* 523 Pa. 483, 567 A.2d 1385 (1989), that where the state manual is silent on an issue, but HIM–15 provides specific provision, no conflict exists between the two manuals and the federal manual prevails. *Id.,* 523 Pa. at 485–86, 567 A.2d at 1385. Relying on *Northwood,* the Commonwealth Court held that no conflict existed between the two manuals regarding the granting of interest on an underpayment of reimbursement since the state manual is silent on the issue. The court concluded that HIM–15 § 2928(B) is applicable and awarded Western Reserve interest.

The DPW contends that the issue is not whether the state and federal manual are in conflict regarding the specific issue of interest awards on judicially determined underpayments, but rather whether they are in conflict regarding the overall process to be used for provider appeals. It contends that the Commonwealth Court's decision fails to view the interest provision in the proper context; that § 2928(B) is merely one aspect of Chapter 29 of HIM–15, which sets forth a comprehensive appeal procedure for Medicare providers. It asserts that § 2928(B) cannot be extracted and incorporated into the MA appeal process.

We agree. A single aspect of HIM–15's appeal process is not applicable to an MA appeal if the process as a whole does not apply. We must not analyze the applicable regulations in a vacuum. MA provider appeals are conducted pursuant to Pennsylvania's Administrative Agency Law (2 Pa.C.S. §§ 501–508, 701–704)[4] and the General Rules of Practice and

4. Section VII of the Manual in effect during the relevant fiscal period provides that a facility may request an administrative hearing "under

Procedure (1 Pa.Code §§ 31.1–35.251).[5] *See generally,* 55 Pa.Code 1101.84 (Provider right to appeal). The federal manual sets forth its own specific procedure for provider appeals in HIM–15 Chapter 29.[6]

Western Reserve contends that having separate appeal procedures does not create a direct conflict between the manuals. Instead, it argues that because the MA appeal procedure does not contain a provision granting interest on improperly held cost reimbursements and the HIM–15 does, no conflict exists and HIM–15 controls. This argument ignores the fact that the MA program is not bound by the federal program appeal process. Section 447.253(e) of the Code of Federal Regulations states:

> (e) Provider appeals. The Medicaid agency [MA program] must provide an appeals or exception procedure that allows individual providers an opportunity to submit additional evidence and receive prompt administrative review, with respect to such issues as the agency determines appropriate, of payment rates.

42 C.F.R. 447.253(e).

Because the MA appeal process is separate and distinct from the process discussed in HIM–15, the state manual, which does not provide for interest on underpayments of reimbursements, controls.

Western Reserve argues that if the DPW's interpretation is adopted, § 1181.65(d)(2) and our decision in *Northwood* would be rendered a nullity as the state manual would always govern over the federal. *Northwood* is clearly distinguishable as it

Pennsylvania's Administrative Agency Law [2 Pa.C.S. §§ 501–508, 701–704]." 8 Pa.Bulletin 2838 (October 14, 1978).

**5.** *See also, Northwestern Institute of Psychiatry v. Department of Public Welfare,* 99 Pa.Commw. 213, 513 A.2d 495, 498 (1986) (hearings for MA providers are conducted pursuant to the General Rules of Administrative Practice and Procedure).

**6.** The language used in the federal interest provision, § 2928(B), is indicative of the specificity with which the process is detailed. Section 2928 discusses judicial review. Subsection (A) states that the provider must file an action in the District Court of the United States for the judicial district in which the provider is located.

did not involve interest on an underpayment or a provider's appeal process. *Northwood* involved the DPW's disallowance of a portion of a nursing home's interest expense due to the offsetting of interest income earned by the parent corporation. Both HIM–15 and the state manual contained provisions regarding the allowance of interest expense and the offsetting of interest income. The state manual, however, was silent as to related party or home office investment income. The Court therefore held that the federal manual applied since it provided detailed cost accounting procedures in that regard. In the instant case, the state manual is not silent on the issue of MA provider appeals.

▇ Another significant distinction is that in *Northwood,* the issue directly involved an allowable operating cost, i.e., a subsidiary nursing home's allowable capital indebtedness expense. Section 1181.65, which directs us to the federal manual when the manuals differ, applies to "allowable operating costs." Here, Western Reserve is appealing the denial of *interest* on an underpayment of reimbursement of allowable costs. We question whether § 1181.65 is even applicable under these circumstances. Allowable costs are defined in the Code as "[c]osts which are necessary and reasonable to the proper care of Medical Assistance patients and which are identified in this subchapter." 55 Pa.Code § 1181.2102. An interest payment on additional monies paid to a provider as a result of its successful legal appeal is not a cost "necessary and reasonable to the proper care" of MA patients and therefore not an "operating cost."

In summary, the DPW is not required to pay MA providers interest on underpayments of reimbursements for nursing home services. The appeal process in the federal manual, which includes an interest provision, does not govern MA provider appeals since the state manual has its own appeal provisions. The Commonwealth Court therefore erred in remanding the case for calculation of interest according to federal regulations. The order of the Commonwealth Court is hereby reversed.

MONTEMURO, J., is sitting by designation.