703 A.2d 1034

NORTHAMPTON CONVALESCENT CENTER, Appellee,

v.

COMMONWEALTH of Pennsylvania, DEPARTMENT OF PUBLIC WELFARE, Appellant.

Supreme Court of Pennsylvania.

Submitted Oct. 2, 1997.

Decided Dec. 24, 1997.

168

John A. Kane, Harrisburg, Catherine Stewart, Philadelphia, for Dept. of Public Welfare.

Leonard W. Crumb, Asst. Counsel, for Dept. of Health & Welfare.

Jeffrey B. Albert, Philadelphia, for Northampton Convalescent Center.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

*OPINION OF THE COURT*

CASTILLE, Justice.

The sole issue on appeal is whether the Commonwealth Court, in reversing the administrative adjudication and ordering the Commonwealth of Pennsylvania, Department of Public Welfare ("DPW") to pay a disputed reimbursement to a nursing facility participating in the Pennsylvania Medical Assistance Program,[1] can also *sua sponte* order the DPW to pay interest at the rate of 6% per annum on that reimbursement. Because we find that the payment of interest on such a reimbursement is prohibited, we reverse the order of the Commonwealth Court.

The relevant facts to this appeal are that Morton Development Corporation ("Morton") owned and operated a nursing facility under the name of Northampton Convalescent Center ("Northampton"). In constructing the facility and its additions, Morton incurred mortgage indebtedness to the Northampton Industrial Development Authority (the "Authority").[2] In 1978, Morton began construction of a 60 bed addition. The addition was financed by bonds issued by the Authority in the aggregate amount of $1,935,000. Morton became indebted to

1. Section 443.1 of the Public Welfare Code Act of June 13, 1967, P.L. 31, as amended, Section 5 of the Act of July 31, 1986, P.L. 904, as amended, 62 P.S. § 443.1. The Medical Assistance Program, which is administered by DPW, is coordinated with and partially funded by the Federal Medical Assistance Program under Title XIX of the Social Security Act, 42 U.S.C. § 1396, *et seq.*

2. In 1973, Morton and the Authority entered into a First Mortgage Indenture. Under this indenture, the Authority issued and sold bonds in the aggregate amount of $1,480,000 in order to finance the acquisition of land and the building of a 120 bed convalescent center which would be sold to Morton. In 1975, Morton and the Authority entered into a First Supplemental Mortgage Indenture. Under this first supplemental indenture, the Authority issued and sold bonds in the amount of $918,100 in order to finance a 57 bed addition to the existing convalescent center.

the Authority for this amount when it entered into a Second Supplemental First Mortgage Indenture with the Authority.

While the construction of this 60 bed addition was in progress, Morton agreed to DPW's request that it operate a facility to provide intermediate care for the mentally retarded.[3] Pursuant to this agreement, Morton filed an application to modify its certificate of need to use the 60 bed addition for this purpose. On October 30, 1979, the modification was approved and the intermediate care facility for the mentally retarded was operated under the name of Praxis.

Morton subsequently made an application to DPW for the reimbursement of services that Northampton provided to Medical Assistance recipients during two fiscal periods relevant to this appeal.[4] The first of these periods ran from July 1, 1987 through June 30, 1988 and the second fiscal period ran from July 1, 1988 through December 7, 1988, the date on which the facility was sold.

After auditing these two fiscal periods,[5] DPW disallowed Morton's application for reimbursement of "interest on capital indebtedness"[6] incurred by Morton on its debt to the Authori-

3. Under the state regulations issued pursuant to the Medical Assistance Program, an intermediate care for the mentally retarded facility is defined as:

> A State operated or nonState operated facility licensed by the Department [DPW] in accordance with Chapter 6600 (relating to intermediate care facilities for the mentally retarded), to provide a level of care specifically designed to meet the needs of persons who are mentally retarded, or persons with related conditions, who require specialized health and rehabilitative services; that is, active treatment.

55 Pa.Code § 6210.3.

4. A nursing facility participating in the Medical Assistance Program is required to file a "cost report" setting forth the nursing facility's computation of allowance costs subject to reimbursement. 55 Pa.Code 1181.64.

5. DPW audits the "cost report" in order to determine whether the computations conform to DPW regulations. 55 Pa.Code § 1181.64.

6. "Interest on capital indebtedness" is defined as "the direct cost incurred for funds borrowed for capital purposes. Examples are acquisition of facilities, equipment and capital improvements. Generally, loans for capital purposes are long term loans." 55 Pa.Code. § 1181.202. If the interest on capital indebtedness is deemed necessary

ty. On July 2, 1992, Morton appealed the disallowance of its claim for reimbursement of interest on capital indebtedness to the Office of Hearings and Appeal ("OHA").[7] On June 17, 1993, the OHA hearing examiner, after conducting a hearing, recommended that Morton's appeal be dismissed since it failed to present evidence showing that DPW's disallowance of interest on capital indebtedness was improper. On that same date, OHA adopted the recommendation.

On July 12, 1993, Morton requested reconsideration of the OHA order from the Secretary of DPW. On September 14, 1993, the Secretary granted Morton's request for reconsideration and the matter was remanded to the OHA hearing examiner. On May 5, 1995, the OHA hearing examiner once again recommended that Morton's appeal be denied. In making this recommendation, the OHA hearing examiner treated Northampton and Praxis as separate subsidiaries of Morton (the parent corporation) and applied DPW regulations (which are known as the Medical Assistance Manual in the Pennsylvania Code) that a subsidiary's interest expense should be offset by a *pro rata* share of the parent corporation's interest income. After applying the offset, the OHA hearing examiner concluded that there was no interest on capital indebtedness which could be subject to reimbursement. On June 7, 1995, OHA adopted the OHA hearing examiner's recommendation in its entirety. On June 27, 1995, the Secretary of DPW granted Morton's request for reconsideration of the June 7, 1995 order. On October 30, 1995, the Secretary of DPW, without opinion, issued an order affirming the June 7, 1995 OHA order.

Morton then appealed to the Commonwealth Court. The Commonwealth Court concluded that the OHA hearing examiner's findings of fact were not supported by substantial evidence and that OHA and the Secretary of DPW had not performed the proper review based on these findings. How-

and proper by DPW, it is an allowable cost for which a facility can be reimbursed under the Medical Assistance Program. 55 Pa.Code § 1181.260(a).

7. Morton had the right to appeal the disallowance pursuant to 55 Pa.Code § 1181.101(a)(2). OHA is now known as the Bureau of Hearings and Appeal.

ever, instead of remanding for further findings, the Commonwealth Court elected to decide the matter on the existing record since the matter had been in litigation for over eight years. On the merits, the Commonwealth Court concluded that Morton was the sole legal entity and that Northampton and Praxis were nothing more than fictitious names used by Morton to render different services. Thus, the Commonwealth Court concluded that Morton's interest on capital indebtedness should have been an allowable expense subject to reimbursement. Therefore, the Commonwealth Court ordered DPW to reimburse Morton for interest on capital indebtedness in the amount of $93,093 for the fiscal period ending June 30, 1988 and $36,193 for the fiscal period ending December 7, 1988. In addition, the Commonwealth Court *sua sponte* ordered DPW to pay interest at the rate of 6% per annum starting on the last day of each respective fiscal period. This Court granted DPW's petition for allowance of appeal in order to determine if the Commonwealth Court erred in ordering DPW to pay Morton interest at the rate of 6% per annum for failing to reimburse for allowable costs of nursing home services.[8]

■■■■ Appeals conducted by Medical Assistance Program providers are conducted pursuant to Pennsylvania's Administrative Agency Law (2 Pa.C.S. §§ 501–508, 701–704) and the General Rules of Practice and Procedure (1 Pa.Code §§ 31.1–35.251). *Western Reserve Convalescent Home v. Commonwealth, Department of Public Welfare*, 541 Pa. 77, 81–82, 660 A.2d 1312, 1315 (1995). Appellate review of an administrative order is limited to determining whether a constitutional violation, an error of law or a violation of the administrative agency procedure has occurred and whether the necessary findings of fact are supported by substantial evidence. 2 Pa.C.S. § 704. If the appellate court reverses the agency adjudication, the appellate court cannot award relief which could not have been awarded by the lower tribunal or agency. *In re Leopardi*, 516

---

8. DPW did not seek review by this Court as to that portion of the Commonwealth Court order requiring it to reimburse Morton for its interest on corporate indebtedness.

Pa. 115, 123, 532 A.2d 311, 315 (1987) (interpreting 42 Pa.C.S. § 706, relating to the disposition of appeals, and its effect on appeals brought under the Administrative Agency Law).

In *Western Reserve*, 541 Pa. 77, 660 A.2d 1312, a nursing facility that participated in the Medical Assistance Program was successful on appeal in obtaining an increase in the reimbursement of allowable costs paid to it by DPW. The nursing facility then filed a subsequent appeal in which it sought an award of interest on the underpayment of reimbursement for services. The Commonwealth Court noted that the federal regulations governing the program controlled the question since the federal regulations provided for such interest while the state regulations in the Medical Assistance Manual were silent as to the nursing facility's entitlement to interest on underpayments for reimbursement of allowable costs.

On appeal, this Court in *Western Reserve* reversed the Commonwealth Court. In doing so, this Court noted that appeals under the Medical Assistance Program are conducted pursuant to Pennsylvania's Administrative Agency Law and Pennsylvania's General Rules of Practice and Procedure and not by the procedure for appeals contained in the federal regulations. Because the Medical Assistance Program appeal process is separate and distinct from the federal appeal process, this Court found that the state Medical Assistance Manual, which does not provide for interest on underpayments of reimbursement, controlled what remedies were available on appeal. In applying the state Medical Assistance Manual, this Court found that interest payments on additional monies paid to a Medical Assistance Program provider as a result of a successful legal appeal were not necessary and reasonable costs to the proper care of Medical Assistance Program patients and therefore, such interest payments were not allowable costs subject to reimbursement. Thus, this Court concluded by stating:

> In summary, the DPW is not required to pay MA [Medical Assistance] providers interest on underpayments of reimbursements for nursing home services. The appeal process

in the federal manual, which includes an interest provision, does not govern MA provider appeals since the state manual has its own appeal provisions. The Commonwealth Court therefore erred in remanding the case for calculation of interest according to federal regulations.

*Western Reserve,* 541 Pa. at 83, 660 A.2d at 1316.

◼ Here, Morton successfully appealed DPW's disallowance of Morton's claim for reimbursement under the Medical Assistance Program for certain interest on capital indebtedness. As such, Morton's appeal, like that in *Western Reserve,* was governed by Pennsylvania's Administrative Agency Law and Pennsylvania's General Rules of Practice and Procedure. Thus, the appeal process as set forth in the Medical Assistance Manual controlled whether Morton was entitled to interest because of DPW's disallowance of the reimbursement. Because, as Morton admits, the state Medical Assistance Manual does not provide for interest on successful appeals of disallowance of reimbursement, this matter is controlled by *Western Reserve.* Therefore, Morton's award of reimbursement from its appeal to the Commonwealth Court did not carry with it the right to interest.[9] Accordingly, the *sua sponte* order of the Commonwealth Court directing DPW to pay Morton interest at the rate of 6% per annum on the Commonwealth Court's award of reimbursement to Morton for certain interest on capital indebtedness, is reversed.

**9.** Morton, recognizing that this issue is controlled by *Western Reserve,* attempts to argue that the dispute over reimbursement was nothing more than a contract dispute which allows a prevailing party to receive interest on an award of damages. However, this argument fails because throughout the entire process prior to the present appeal, Morton always pursued the matter as an administrative appeal from the DPW's disallowance of a reimbursement under the Medical Assistance Program. Morton also attempts to argue that the award of interest was made pursuant to Pa. R.A.P. 2744, which allows an appellate court to award delay damages at a rate of 6% if it determines the appeal was frivolous. This argument fails because the Commonwealth Court makes no reference to making the award pursuant to Rule 2744 and Morton never requested such an award in its appeal. Finally, Morton argues that DPW waived this issue since it was not raised in a timely motion for reconsideration with the Commonwealth Court. This argument also fails because no rule of appellate procedure requires a losing party to file a motion for reconsideration.