**ALLEGHENY COUNTY OFFICE OF CHILDREN, Youth and Families, Petitioner**

v.

**DEPARTMENT OF PUBLIC WELFARE, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted Oct. 17, 2006.

Decided Nov. 29, 2006.

Paula J. Benucci, Pittsburgh, for petitioner.

Myra W. Sacks, Asst. General Counsel, Harrisburg, for respondent.

BEFORE: FRIEDMAN, Judge, and LEADBETTER, Judge, and LEAVITT, Judge.

OPINION BY Judge LEAVITT.

Allegheny County Office of Children, Youth and Families (CYF), petitions for review of the adjudication of the Secretary of Public Welfare upholding the decision of the Department of Public Welfare (Department), Bureau of Hearings and Appeals (BHA) to grant retroactive adoption assistance to the family of Serina Jenkins. The issue presented in this appeal is whether eligibility for adoption assistance requires the applicant to satisfy the federal financial participation criteria set forth in the Department's regulations.

Serina Jenkins was born on July 24, 1984, in New Mexico. Serina is a Native American. Serina was in and out of the public child welfare system and foster care in New Mexico until 1989 when she was adopted by a Pennsylvania couple, the Snyders. Serina lived with the Snyders in Pennsylvania from age 5 to age 10. On September 4, 1994, the Snyders voluntarily placed Serina with the Council of Three Rivers American Indian Center (Center), a Pennsylvania-licensed, Allegheny County agency, providing foster and adoption services.

The Center placed Serina in the Allegheny County foster home of James and Janice Jenkins in September 1994. With the Center's assistance, the Jenkins adopted Serina, then eleven years old, and on May 30, 1996, the Court of Common Pleas of Allegheny County entered an adoption decree. Prior to the entry of this decree, Mrs. Jenkins had signed a placement agreement with the Center that stated that Serina was not eligible for an adoption subsidy. Mrs. Jenkins signed the 1994 placement agreement because she was told that she would "lose" Serina if she did not sign it. Reproduced Record at 47a (R.R.____). Furthermore, she was reassured by the Center that they would help her get an adoption subsidy afterwards.

Even before Serina's adoption, Mrs. Jenkins attempted to arrange adoption assistance for Serina. Approximately seven months prior to the adoption decree, Mrs. Jenkins' adoption attorney sent a letter to the Center seeking an update on "some kind of support" for Serina. R.R. 11a. According to the director of the adoption

and foster care program, Margaret Gold[1], the Center records indicated that it never responded to the letter. Mrs. Jenkins made numerous telephone calls to the Center and CYF in an attempt to get adoption assistance for Serina. In turn, the Center and CYF each respectively told Mrs. Jenkins to contact the other agency or to contact the State of New Mexico for adoption assistance. Mrs. Jenkins was unable to get any information from the State of New Mexico.

On June 23, 1998, Mr. and Mrs. Jenkins faxed a letter to CYF asking for help in getting a subsidy and health insurance for Serina. CYF also received a letter from Mrs. Jenkins on August 18, 1998, again requesting a subsidy and health insurance. CYF forwarded the letter to the BHA, notifying it that Mr. and Mrs. Jenkins wanted an appeal hearing on the matter. On June 18, 2002, BHA issued a Rule to Show Cause why the matter should not be dismissed, due to the adoption assistance request being made after the adoption was finalized. BHA dismissed the appeal on April 13, 2004.

Mrs. Jenkins then requested reconsideration, and the Secretary of Public Welfare granted reconsideration for a hearing on the merits. By order of May 17, 2005, the Administrative Law Judge (ALJ) directed the county to pay Mrs. Jenkins an adoption subsidy, including all benefits and payments for Serina. The subsidy extended from the date of her adoption on May 30, 1996, to the day prior to her eighteenth birthday, July 23, 2002. This order was affirmed in a Final Administrative Action Order on May 19, 2005. CYF requested reconsideration from the Secretary, which was granted on June 20, 2005. The Secretary issued a Final Order on the merits on October 21, 2005, upholding the BHA's decision to grant retroactive adoption assistance.

■ CYF appealed.[2] Before this Court, CYF defines the issue as a question of whether the Secretary erred "in determining that the findings of fact were supported by substantial evidence." CYF Brief at 4. However, its argument does not challenge the factual findings in the adjudication. Rather, CYF contends that the findings, such as they are, do not satisfy the standards for retroactive adoption assistance.

■ The Federal Adoption Assistance and Child Welfare Act of 1980 is incorporated into Title IV–E of the Social Security Act, 42 U.S.C. §§ 670–679a. It promotes the adoption of children with special needs by providing federal funding to states to provide financial assistance to families willing to adopt children with special needs. *Allegheny County Office of Children & Youth Services v. Department of Public Welfare*, 800 A.2d 367, 370 (Pa. Cmwlth.2002). Under Title IV–E, each state must enact its own program for administering adoption assistance; however, Pennsylvania has long had its own provisions for financial assistance for adoption, which were added to the Public Welfare Code, Act of June 13, 1967, P.L. 31, *as amended*, by the Act of December 30, 1974, P.L. 1039, 62 P.S. §§ 771–774. These provisions added subarticle (e) to

---

**1.** Gold was not, however, employed with the Center at the time the Jenkins got custody of Serina and went through the adoption process.

**2.** This Court's standard of review of a decision by the Department is limited to a determination of whether the Department's adjudication is supported by substantial evidence, is in accordance with the law or whether constitutional rights were violated. *York County Children and Youth Services v. Department of Public Welfare*, 833 A.2d 281, 286 n. 11 (Pa. Cmwlth.2003).

Article VII of the Public Welfare Code, which is entitled "Adoption Opportunities Act."[3] The Department is the agency responsible for implementation of the Adoption Opportunities Act and was charged with the responsibility to promulgate regulations that establish the criteria for identifying eligible children and adoptive homes.

Pennsylvania's adoption assistance program is run by the counties, which determine eligibility and make subsidy payments where eligibility is certified. The Department's regulation provides, in pertinent part, as follows:

(b) The county agency shall certify for adoption assistance children whose placement goal is adoption and who meet the following requirements:

(1) *The child is 17 years* of age or younger.

(2) *Parental rights have been terminated* under 23 Pa.C.S. Part III (relating to the Adoption Act)

(3) *The child is in the legal custody* of the county agency or *another agency* approved by the Department.

(4) The child shall have at least one of the following characteristics:

(i) A physical, mental or emotional condition or handicap.

(ii) A genetic condition which indicates a high risk of developing a disease or handicap.

(iii) Be a member of a minority group.

(iv) Be a member of a sibling group.

(v) Be 5 years of age or older.

55 Pa.Code § 3140.202(b). At the time of her adoption, Serina was under 17; the parental rights of her parents had been terminated; and she was in the custody of the Center, an agency licensed by the Department. 55 Pa.Code § 3140.202(b)(1)-(3). Further, she had more than one of the requisite characteristics in that she was 11 years of age and a member of a minority group. Indeed, CYF concedes that Serina met the criteria of 55 Pa.Code § 3140.202(b).

■■■ The Center had an affirmative duty to explain the adoption assistance program to the prospective adoptive parents of Serina, but it did not. Adoption subsidy agreements with prospective adoptive parents of eligible children must be executed prior to entry of a final adoption decree.[4] However, where there are "extenuating circumstances," adoptive parents can apply for and receive adoption assistance after a final decree. *Adoption ARC v. Department of Public Welfare*, 727 A.2d 1209 (Pa.Cmwlth.1999). Such extenuating circumstances were found here because the BHA found that the Jenkins family had been "sent in circles" by the agencies, *i.e.*, the Center and CYF, each advising that Serina's parents needed to contact the other agency. Again, CYF does not challenge the finding that the Jenkins were entitled to the "extenuating circumstances"

---

**3.** It states in relevant part, that the act was intended

to encourage and promote the placement in adoptive homes of children who are ... hard to place by virtue of age, sibling relationships, or ethnicity.

62 P.S. § 771.

**4.** Department regulations provide that the county agency "shall execute a binding written adoption assistance agreement between the parties—prospective adoptive parents and county agency—at the time of or before the court issues the final adoption decree." 55 Pa.Code. § 3140.203(a). If, however, an adoption assistance agreement is not signed and in effect at the time of or prior to finalization of the adoption, the adopting parents may request a fair hearing under 42 U.S.C. § 671(a)(12), provided there are extenuating circumstances. *See, e.g., Gruzinski v. Department of Public Welfare*, 731 A.2d 246, 249, n. 7 (Pa.Cmwlth.1999).

exception to the requirement that the adoption assistance agreement be executed prior to entry of the final adoption decree.

In spite of conceding that Serina was a special needs child under 55 Pa.Code § 3140.202(b) and that extenuating circumstances for retroactive assistance were shown, CYF asserts that the Department erred. It does so by arguing that no evidence was presented to show that Serina met the standards for Title IV–E adoption assistance.

The regulation relating to Title IV–E payments is set forth at 55 Pa.Code § 3140.205 and states:

(a) Adoption assistance payments shall qualify for Federal financial participation under Title IV–E of the Social Security Act (42 U.S.C.A. §§ 670–676) (Title IV–E), when the requirements of this chapter are met and a child is placed with approved adoptive applicants.

(b) To continue Federal financial participation after the adoption is finalized, the child shall meet one of the following conditions:

(1) the child is eligible for Aid to Families with Dependent Children and is living with a relative at the time the adoption petition is filed.

(2) The child is receiving Title IV–E placement maintenance at the time the adoption petition is filed.

(3) the child meets Supplemental Security Income eligibility requirements.

(4) the child is a child whose placement costs are covered by Title IV–E payment made with respect to the child's minor parent.

CYF contends that the criteria in Section 3140.205(b) had to be satisfied in order for the Jenkins to qualify for adoption assistance.[5]

This issue was directly addressed and resolved by this Court in the case of *Ward v. Pennsylvania Department of Public Welfare,* 756 A.2d 122 (Pa.Cmwlth.2000). As here, the adoptive parents in *Ward* sought assistance long after the adoption was finalized. The Department contended that eligibility for assistance required the applicants to satisfy the standards in both 55 Pa.Code § 3140.202 and 55 Pa.Code § 3140.205. This Court concluded that the two provisions addressed different objectives and explained:

In sum, the federal eligibility requirements [§ 3140.205] determine only the source and amount of reimbursement that the county agency will receive; the state eligibility requirements contained in § 3140.202 determine whether the child and adoptive parents are entitled to receive assistance from the county agency ... Because it is undisputed that Brianna meets the requirements outlined in § 3140.202, she is eligible to receive all forms of adoption assistance available to her from the Commonwealth.

*Id.* at 125.

■ We are bound by *Ward.* We reject CYF's argument that in order to be eligible for adoption subsidy, the Jenkins had also to satisfy the requirements set forth in Section 3140.205(b). Because it is undisputed that Serina meets the requirements outlined in Section 3140.202, her family was eligible to receive retroactive adoption assistance.[6]

---

**5.** The Department argues in its brief that Serina satisfies the criteria of 55 Pa.Code § 3140.205(b). We need not reach this question because it is irrelevant to our disposition of the appeal.

**6.** CYF briefly argues, with no citation to authority, that if this Court deems Serina eligi-

For these reasons, we affirm the Secretary of Public Welfare.

## ORDER

AND NOW, this 29th day of November, 2006, the order of the Department of Public Welfare dated October 21, 2005, in the above captioned matter is hereby AFFIRMED.

ble for state adoption subsidy, the Department should bear full responsibility for paying the entire amount as their dilatory response to the Jenkins' appeal resulted in the large retroactive payment at issue here. This argument is without merit, as adoption assistance payments are "provided by the county children and youth services agency, subject to reimbursement by the federal government and/or the state." *Allegheny County Office of Children, Youth and Families v. Department of Public Welfare*, 800 A.2d 367, 372 (Pa. Cmwlth.2002).