**Gary and Lori LAIRD, Petitioners**

**v.**

**DEPARTMENT OF PUBLIC WELFARE, Respondent**

**Legrand Johnson and Shelli Johnson (In Re: J.J.J.), Petitioners**

**v.**

**Department of Public Welfare, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Feb. 23, 2009.

Decided May 1, 2009.

Reargument Denied En Banc June 25, 2009.

Tara E. Gutterman, Suzanne R. Fisher, and James G. Colins, Philadelphia, for petitioner.

Howard Ulan, Deputy Chief Counsel, Harrisburg, for respondent.

Craig Gottlieb, Philadelphia, for intervenor, City of Philadelphia.

BEFORE: LEADBETTER, President Judge, and SMITH–RIBNER, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge SMITH–RIBNER.

Gary and Lori Laird and Legrand and Shelli Johnson (Petitioners) petition the Court for review of the final orders of the Secretary of the Department of Public Welfare (DPW) denying adoption subsidies for Petitioners' special needs children. The Administrative Law Judges (ALJ) awarded subsidies to Petitioners in November and December 2007, and the Regional Manager of the Bureau of Hearings and Appeals affirmed. Upon reconsideration, the Secretary of DPW set aside the awards on the basis that the children were ineligible for subsidy under Section 772 of the Act known as the Adoption Opportunities Act (State Act).[1] The issue is whether the Secretary erred in denying eligibility to these children.

Alyssa and Addison are African–American females who were born in Philadelphia on March 5, 1998 and November 30, 1998, respectively. J.J.J. is an African–American male born in Philadelphia on June 6, 1995. Alyssa and Addison were placed with the Lairds in Utah and J.J.J. with the Johnsons in New Mexico through a private DPW-licensed non-profit agency, the Adoption Resource Center, Inc. (ARC). The Lairds adopted their children in October 1998 and in July 1999, respectively, and the Johnsons adopted J.J.J. in December 1995. Parental rights to all of the children were terminated under Pennsylvania law, and the adoptions were finalized in Utah and New Mexico, respectively.

At the time of adoption, ARC's counsel Tara E. Gutterman informed Petitioners that their children would be ineligible for subsidies based on counsel's belief that the Philadelphia Department of Human Services (DHS) was opposed to certifying eligibility for subsidies for children adopted through a private agency. In 1999 Gutterman successfully argued in *Adoption ARC, Inc. v. Department of Public Welfare,* 727 A.2d 1209 (Pa.Cmwlth.1999), that children adopted through a private DPW-licensed agency were eligible for subsidies. Several years later, in April 2007, Petitioners applied for retroactive subsidies through Gutterman, which DHS denied.

The State Act provides a subsidy to prospective adoptive parents to promote adoptions of children "who are physically

---

1. Section 772 of the Public Welfare Code, Act of June 13, 1967, P.L. 31, *as amended,* added by Section 1 of the Act of December 30, 1974, P.L. 1039, 62 P.S. § 772.

and/or mentally handicapped, emotionally disturbed, or hard to place by virtue of age, sibling relationship, or ethnicity." Section 771 of the State Act, 62 P.S. § 771. Eligibility for a subsidy is determined pursuant to 55 Pa.Code § 3140.202, which provides in relevant part:

(b) The county agency shall certify for adoption assistance children whose placement goal is adoption and who meet the following requirements:

(1) The child is 17 years of age or younger.

(2) Parental rights have been terminated under 23 Pa.C.S. Part III (relating to the Adoption Act).

(3) The child is in the legal custody of the county agency or another agency approved by [DPW].

(4) The child shall have at least one of the following characteristics:

(i) A physical, mental or emotional condition or handicap.

. . . .

(iii) Be a member of a minority group.

(iv) Be a member of a sibling group.

In addition, 55 Pa.Code § 3140.203(a) requires that "[t]he county agency shall execute a binding written adoption assistance agreement between the parties—prospective adoptive parents and county agency— at the time of or before the court issues the final adoption decree."

ALJ Rosemarie T. Kenkelen concluded that Alyssa and Addison are eligible for subsidies under 55 Pa.Code § 3140.202 and that federal criteria do not apply pursuant to *Ward v. Pennsylvania Department of Public Welfare,* 756 A.2d 122 (Pa.Cmwlth. 2000) (holding that federal criteria determine source and amount of reimbursement and that 55 Pa.Code § 3140.202 determines eligibility).[2] She determined that under 55 Pa.Code § 3140.206 [3] a child may be eligible for subsidy regardless of eligibility under federal criteria and that extenuating circumstances existed to justify granting adoption assistance after the final decree. She stated:

No representative of Adoption ARC, a private non-profit agency licensed by [DPW] and thus, an agent of the State, advised the Appellants of the availability of adoption assistance before the final decree of adoption. The children . . . satisfied the criteria for eligibility . . . , yet the agency, Adoption ARC, did not encourage the Appellants to apply for adoption assistance. One should not ascribe fault to the Appellants . . . as Adoption ARC had an affirmative obligation to inform the Appellants about an adoption subsidy. [*Ferdinand v. Department for Children and Their Families,* 768 F.Supp. 401 (D.R.I.1991) ].

ALJ's Opinion, p. 12; Reproduced Record (R.R.) (Lairds) at 32a. The ALJ rejected DHS' argument that it was too late to apply for a subsidy. The ALJ found that the children were born in Philadelphia, that the biological parents' parental rights

**2.** DPW claimed during oral argument before the Court that the children may not satisfy 55 Pa.Code § 3140.202(c) (requiring the county agency to make reasonable efforts to find a home without providing subsidy); but this argument was not raised below and cannot be considered. Pa. R.A.P. 1551(a). The federal government provides adoption subsidy for special needs children under the Adoption Assistance and Child Welfare Act of 1980

(Federal Act), 42 U.S.C. §§ 621–628, 670– 679a.

**3.** 55 Pa.Code § 3140.206 provides that the state will reimburse 80% of county agency costs for "[a]doption assistance payments or nonrecurring adoption expenses, or both, when the child is not eligible for Federal financial participation."

were terminated there, that ARC was an agent of DPW and that 55 Pa.Code § 3140.203 permitted subsidies despite the adoptive parents' relocation to another state or out-of-state residency at the time of adoption through a DPW-licensed agency.

ALJ Gerald C. Coleman found that J.J.J. was eligible for a subsidy under 55 Pa.Code § 3140.202 and that DHS was required to certify. He reasoned:

> [In *Ferdinand* ], the court, relying on C.F.R. Section 356.40(f), held that the state [and those acting for the state] has an affirmative duty to fully explain all available adoption assistance programs so that the adoptive parents can make an informed decision. In this case, the duly license[d] adoption agency failed to properly advise the Johnsons of the assistance programs. In fact, at the time of the adoption, the Johnsons were told DHS would not grant an adoption subsidy for J.J.J.

ALJ's Opinion, p. 10; R.R. (Johnsons) 27a–28a. The ALJ noted that since 1983 DPW has had a duty to provide information regarding eligibility and subsidies.

■ DPW Secretary Estelle B. Richman set aside the ALJs' awards based upon the following reasoning:

> [DHS] did not certify the children as eligible for adoption assistance. [DHS] was not involved in the placement or adoption of the children, and was not aware of the children until the Appellants applied for adoption assistance 8 and 9 years after the adoptions.

. A county agency does not have a responsibility to seek out and inform individuals who are unknown to the county agency about the possibility of adoption assistance for children who are also unknown to the county agency.

R.R. (Lairds) at 112a.[4]

Petitioners argue that their children satisfied 55 Pa.Code § 3140.202 criteria: they were under seventeen when adopted; parental rights were terminated under 23 Pa.C.S. Part III; they were in the custody of a DPW-licensed agency; and they are members of a minority group. *See Allegheny County Office of Children, Youth and Families v. Department of Public Welfare*, 912 A.2d 342 (Pa.Cmwlth.2006) (*Allegheny II* ) (finding a child eligible who met 55 Pa.Code § 3140.202(b) criteria). Petitioners argue that the Secretary's basis for setting aside the awards is absurd when eligibility determines certification, not vice versa, and that Section 772 of the State Act must be read together with 55 Pa.Code § 3140.202.

Petitioners assert that courts have allowed adoption subsidies after the final adoption decree if extenuating circumstances existed to justify the application delay. *Allegheny II; Allegheny County Office of Children, Youth and Families v. Department of Public Welfare*, 800 A.2d 367 (Pa.Cmwlth.2002) (*Allegheny I* ). Petitioners argue that the ALJs' findings that an extenuating circumstance existed may not be disturbed and that under Section 772 of the State Act DHS must certify the children who meet the eligibility criteria. Regarding Gutterman's incorrect ad-

---

4. Review of an administrative order is limited to determining whether constitutional rights were violated, errors of law were committed, the administrative agency's procedure or practice was not followed and whether the necessary findings of fact are supported by substantial evidence. 2 Pa.C.S. § 704; *Gruzinski v. Department of Public Welfare*, 731 A.2d 246 (Pa.Cmwlth.1999). If the appellate court reverses the agency's adjudication, the court cannot award relief that could not have been awarded by the lower tribunal or agency. *Northampton Convalescent Ctr. v. Department of Public Welfare*, 550 Pa. 167, 703 A.2d 1034 (1997).

vice, Petitioners maintain that allocating fault between ARC and DHS is irrelevant and, in any event, that DHS and DPW share culpability. Under 45 C.F.R. § 1356.40(f), DPW was required to actively seek ways to promote the assistance program yet made no effort to notify its licensed agencies about subsidies for children placed through them. Also, the Secretary's final orders represent an abuse of discretion and a denial of due process because she failed to specify reasons, evidence and regulatory authority pursuant to 2 Pa.C.S. § 507 and *Heinsohn v. Department of Public Welfare*, 66 Pa. Cmwlth. 517, 445 A.2d 271 (1982).[5]

DPW's reply is that the State Act does not require a subsidy award after entry of a final adoption decree. In *C.B. ex rel. R.R.M. v. Department of Public Welfare*, 567 Pa. 141, 786 A.2d 176 (2001), the court noted the legislature's finding that children placed through private agencies are less likely to face a shortage of willing adoptive parents. Under 55 Pa.Code § 3140.203(a), a subsidy request shall be executed at the time of or prior to issuance of a final adoption decree. Although the Court in *Ward* found an applicant eligible two years after the final decree, it did not address 55 Pa.Code § 3140.203(a). Petitioners willingly adopted their children without subsi-

dies, and granting retroactive subsidies to them would frustrate public policy as it would provide a windfall and simultaneously reduce funds available for parents who would not adopt children without a subsidy.

DPW stresses the number of special needs children currently in foster care and awaiting adoption and the number of parents who might seek retroactive subsidy. It urges the Court to consider the consequences that might flow from a particular interpretation in accordance with *Bayada Nurses, Inc. v. Department of Labor and Industry*, 958 A.2d 1050 (Pa.Cmwlth.2008). Moreover, the timeliness requirement in 55 Pa.Code § 3140.203(a) is clear, and even if it is not clear DPW's interpretation is entitled to deference. Further, the brevity of the Secretary's orders does not establish inadequacy as they contain reasoning and cite applicable law.[6]

Intervenor DHS argues that an extenuating circumstance exists only where the county agency meets with the adoptive parents and fails to mention the subsidy program. The Court can review the ALJs' findings in this regard as it did in *Allegheny I, Allegheny II, Gruzinski v. Department of Public Welfare*, 731 A.2d 246 (Pa. Cmwlth.1999), and *York County Children*

5. Petitioners also claim that DPW and DHS failed to act impartially, abused their authority and denied due process under *Kelly v. County of Allegheny*, 519 Pa. 213, 546 A.2d 608 (1988). DHS' and DPW's decisions were driven by budget concerns that are irrelevant to a determination of eligibility. The Secretary denied the retroactive awards although she upheld such an award in a similar case, and DHS and DPW showed their bias by raising meritless arguments before the ALJs. DHS has a pattern of denying certification to children placed through private agencies. DPW replies that to prove impermissible bias, there must be evidence particular to the adjudicator and to the controversy, and there was none here. Under *Subaru of Am., Inc. v. State Board of Vehicle Manufacturers, Dealers and*

*Salespersons*, 842 A.2d 1003 (Pa.Cmwlth. 2004), the fact that DPW and DHS administer the adoption assistance program does not support bias.

6. Although DPW asserts a laches defense in its brief, this argument was not raised before the agency and therefore cannot be considered. Pa. R.A.P. 1551(a). The only reference to laches before the agency was contained in DPW's memorandum in support of DHS' reconsideration petition in the Lairds' case, which simply asserts that DHS alleged laches. DHS' petition does not even mention laches, and DPW's memorandum does not at all develop the laches argument.

*and Youth Services v. Department of Public Welfare*, 833 A.2d 281 (Pa.Cmwlth. 2003). Also, DHS was unaware of the children's existence at the time of adoption unlike the agencies in *Allegheny I, Allegheny II* and *Gruzinski*. In addition, the policy statement issued by the U.S. Department of Health and Human Services in ACYF–CB–PA–01–01 (Jan. 23, 2001) provides that "[i]t is not the responsibility of the State or local agency to seek out and inform individuals who are unknown to the agency about the possibility of title IV–E adoption assistance for special needs children who are also unknown to the agency." The only misinformation about the adoption assistance program came from Gutterman, which in DHS' view creates no liability for DHS because it has no affiliation with ARC.

■ Upon review of the circumstances, the Court is of the opinion that the Secretary erred when she found that the children were ineligible for subsidies when in fact they meet the eligibility requirements of 55 Pa.Code § 3140.202. *Allegheny II*. Because the children meet the requirements, DHS erred in failing to certify them for subsidies pursuant to 55 Pa.Code § 3140.202(b). Although no adoption assistance agreements were executed prior to or at the time of the adoptions, it is undisputed that ARC failed to inform Petitioners about the availability of subsidies at the time of the adoptions, which would have allowed them to make an informed decision regarding application for assistance. *Gruzinski*; *Ferdinand*.

In *Gruzinski* the Court adopted the federal guideline for establishing extenuating circumstances to justify granting a subsidy subsequent to the entry of a final adoption decree, *i.e.*, when there is a "failure to

advise adoptive parents of the availability of adoption assistance." *Id.*, 731 A.2d at 256. This requirement to inform is consistent with 55 Pa.Code § 3130.36(b)(2), which mandates the county agency to actively seek ways to promote the assistance program. Accordingly, an extenuating circumstance exists in this case to justify the children's eligibility for subsidies after their final adoption decrees were entered due to ARC's failure to properly advise Petitioners of the availability of adoption assistance. *Gruzinski*.

■ The Court rejects the contention that no extenuating circumstance exists because neither DPW nor DHS personally interacted with Petitioners and had no knowledge of the children's existence. ARC, however, is a private adoption agency licensed by DPW, and for that reason ARC's actions were attributable to DPW. *Allegheny II*; *Adoption ARC*. Similarly, the Court rejects the contention that the extenuating circumstance exception applies only to cases involving federal subsidy. Such a restrictive application would not serve purposes of the State Act.

The weight of case law in this Commonwealth compels the Court to conclude that the ALJs were correct in awarding adoption subsidies for Petitioners' children, which shall be made retroactive and effective as of the date of the final adoption decrees. *See Allegheny I* (awarding subsidies eight years after adoption); *Gruzinski* (six years); *Ward* (two years); and *Allegheny II* (two years). Because the children meet the eligibility criteria under 55 Pa.Code § 3140.202, the Secretary of DPW erred in determining that they were not eligible for subsidies and in denying their certification accordingly.[7] Therefore,

7. Petitioners presented a document called a "Summary of Argument" during oral argument in this matter on February 23, 2009,

which Petitioners withdrew by praecipe the next day. DPW filed its response to the summary pursuant to the Court's February 24,

the orders entered by the Secretary of DPW are reversed, and the orders entered by the ALJs are reinstated.

### ORDER

AND NOW, this 1st day of May, 2009, the Court reverses the orders of the Secretary of the Department of Public Welfare and reinstates the orders of Administrative Law Judges Rosemarie T. Kenkelen and Gerald C. Coleman awarding retroactive adoption subsidies to Petitioners. The Court vacates its February 24, 2009 order and also denies Petitioners' application to strike Respondent's arguments on appeal.

### CONCURRING OPINION BY
President Judge LEADBETTER.

I concur in the result reached by the majority in this case, and do not quarrel with its analysis, because I believe there is little question that petitioners would have been entitled to adoption assistance had they made a timely application, and further that the majority faithfully follows binding precedent of this court concerning the doctrine of extenuating circumstances. I write separately, however, to express my belief that this case graphically illustrates the shortsightedness of prior decisions in which, finding entitlement to adoption assistance and extenuating circumstances,

we have automatically ordered payment of full retroactive benefits without discussion. The doctrine of extenuating circumstances is an equitable remedy, and the measure of relief should, in my judgment, be tailored to all the circumstances attendant to the case. While failure by the agency to advise the adoptive parents of their right to apply for adoption assistance may well excuse a belated filing, we should consider such factors as whether the parents acted promptly after they learned or should have known of their right, how much time has passed since the adoption, whether there is a financial need for the assistance, and what impact the payment of full retroactive benefits will have on the agency, or more precisely on the other special needs children competing for scarce resources. Only after these factors have been balanced can a fair and equitable determination be made concerning the amount, if any, of retroactive benefits to be awarded. Accordingly, were we writing on a clean slate, I would remand for consideration of these and any other similar relevant factors by DPW.

2009 order, which Petitioners have now moved to vacate in light of the withdrawal of their summary. Petitioners asserted in their motion that DPW and DHS should not be allowed a "second bite at the apple" by permitting them to respond to a withdrawn document. Because the withdrawn summary has not been considered, the Court grants the motion and vacates the February 24 order. Consistent therewith, Petitioners' post-argument application to strike DPW's arguments on appeal is denied. Petitioners have sought to make further arguments, which the Court will not permit.