Commonwealth of Pennsylvania ex rel. William J. Sheppard, Insurance Commissioner, Statutory Liquidator for Gateway Insurance Company, Plaintiff *v.* Central Penn National Bank, Defendant.

Argued March 8, 1977, before President Judge Bowman and Judges Crumlish, Jr., Kramer, Wilkinson, Jr., Mencer, Rogers and Blatt.

*G. David Rosenblum,* with him *Astor & Weiss,* for plaintiff.

*Richard M. Shusterman,* with him *White and Williams,* for defendant.

Opinion by President Judge Bowman, July 20, 1977:

Plaintiff, William J. Sheppard, Insurance Commissioner and Statutory Liquidator for Gateway Insurance Company (Gateway) initiated this action in assumpsit within our original jurisdiction to recover certain monies (alleged to total $709,864.05) which

were previously held either by Gateway or by a related company allegedly in Gateway's behalf, in various accounts maintained with the defendant, Central Penn National Bank. Presently before us are the plaintiff's preliminary objections to the "new matter and setoffs and/or counterclaims" asserted by the defendant.

On July 12, 1974, plaintiff, as Insurance Commissioner, entered an order suspending the entire business of Gateway pursuant to Section 502 of The Insurance Department Act of one thousand nine hundred and twenty-one[1] (Act), 40 P.S. §202, on the ground that the company was insolvent and in such condition that its further transaction of business would be hazardous to its policyholders, its creditors and to the public. On August 21, 1974, an Order was entered by this Court at No. 984 C.D. 1974, which, *inter alia*, declared Gateway insolvent, ordered its liquidation, vested title to all its books of account, records, property, contracts, rights of action and assets in the Insurance Commissioner as Statutory Liquidator, and enjoined all persons from instituting or prosecuting any action at law or in equity against Gateway.

Meanwhile, defendant had, on or about July 15, 16 and 17, 1974, debited the entire balances of all accounts of Gateway as well as various other related companies, pursuant, in Gateway's case, to a suretyship agreement (agreement) executed by Gateway on January 6, 1970. Under this agreement, Gateway became surety for all present and future obligations of Acme Assurance Agency, Inc. (Acme), a Pennsylvania corporation which acted as agent for Gateway and was, like Gateway, a wholly owned subsidiary of Fisco, Inc. (Fisco). The agreement also afforded the defendant a lien upon all of Gateway's funds, monies, balances and other property at any time in defendant's possession, to-

---

[1] Act of May 17, 1921, P.L. 789, *as amended.* 40 P.S. §1 et seq.

gether with the full right to apply, set off or credit the same against Gateway's liability. On September 20, 1973, defendant had loaned Acme $2,500,000.00 which was secured by the aforementioned agreement as well as similar agreements executed by Fisco and other related companies and was evidenced by a demand note in the amount of the loan plus interest.

Upon learning of the suspension order of July 12, 1974, defendant made demand upon Gateway and the other companies for immediate payment in the amount of $2,500,000.00 plus accrued interest and immediately began exercising its right of setoff under the various suretyship agreements.[2] It was the defendant's action of setting off the amounts in the various accounts that precipitated this action by the plaintiff to recover those amounts. In its answer, defendant has denied any improper action on its part and, in addition, has asserted, in nine separate counts, various "Setoffs and/or Counterclaims" (hereinafter referred to as simply "counterclaims") based on the suretyship agreement and on the alleged wrongful actions of Gateway and its agents, officers and employees in inducing defendant to make the loan to Acme. Defendant requests judgment in its favor in the amount of $2,199,274.13 plus additional interest, attorneys' fees and the cost of this action. Plaintiff's preliminary objections primarily challenge the right of defendant to assert such counterclaims *in this action*.

Plaintiff argues that such counterclaims cannot be maintained in view of Section 502 of the Act which provides in pertinent part:

> *From the date of such suspension* [by the Insurance Commissioner] on the ground that the

---

[2] Defendant claims that the total amount set off from the accounts specified in plaintiff's amended complaint was $656,827.05 and not $709,864.05 as alleged by plaintiff.

suspended organization is insolvent, or is in such condition that its further transaction of business will be hazardous to its policyholders or to its creditors or to the public, *no action at law or equity shall be commenced or prosecuted nor shall any judgment be entered against nor shall any execution or attachment be issued or prosecuted* against the suspended company . . . or against its property, in any court of this Commonwealth. . . . (Emphasis added.)

We view this argument as essentially raising the affirmative defense of statutory immunity from suit, which defense should properly be pleaded as new matter in an answer or, in this case, in plaintiff's reply to defendant's counterclaims. It is clear that such a defense cannot be asserted, as two of plaintiff's preliminary objections attempt to do, as: (1) a motion to strike for lack of conformity to law pursuant to Pa. R.C.P. No. 1017(b)(2); or (2) a petition raising the defense of lack of capacity to sue pursuant to Pa. R.C.P. No. 1017(b)(5). The purpose of a motion to strike under 1017(b)(2) is to object to formal errors in pleading and lack of capacity to sue refers to some personal disability of a party to bring an action. *See* Goodrich-Amram 2d §1017(b):8, 14. Neither of these objections can be employed to raise the defense of immunity from suit and they must, therefore, be overruled.

Plaintiff has also attempted to assert immunity by way of a demurrer. While, as we have indicated above, this too is improper as a matter of form, this Court as well as the Supreme Court have, in the interest of judicial economy, frequently allowed immunity to be raised by demurrer where the other party has not objected; *see, e.g., Freach v. Commonwealth,* Pa. , n.6, 370 A.2d 1163, 1166 n.6 (1977). Since defendant here has not questioned the manner

in which plaintiff has raised the immunity issue and since no purpose would be served by requiring plaintiff to file a reply raising that same issue, we will consider it on the demurrer. As we are of the view that Section 502 of the Act does confer immunity on plaintiff with respect to defendant's counterclaims, the demurrer will be sustained.

While we agree with defendant that plaintiff, as statutory liquidator, "stands in the shoes" of Gateway and that his *contract* rights are "not superior to nor 'more extensive than' those of the carrier whose affairs he is liquidating," *Commonwealth ex rel. Kelly v. Commonwealth Mutual Insurance Co.,* 450 Pa. 177, 181, 299 A.2d 604, 606 (1973), defendant seems to ignore the fact that the claim of immunity here is based not on any *contract* rights but on a specific *statutory* right conferred by Section 502. That section clearly provides that from the date of suspension, which, in this case, was July 12, 1974, "no action at law or equity shall be commenced or prosecuted . . . in any court of this Commonwealth." 40 P.S. §202.[3] Defendant's brief makes no reference to Section 502, the provisions of which we view as absolutely controlling here.

While we recognize that the so-called Defalcation Act of 1705, 1 Sm. L. 49, 12 P.S. §601, did first establish a right in defendants to set off or "defalc" claims in certain cases, and that Pa. R.C.P. No. 1031 does prescribe the manner in which counterclaims are to be pleaded, we do not see how that statute or the procedural rules in any way vitiate the clear grant of immunity provided in Section 502. The intent of Section 502 is to freeze the rights of creditors and policy-

---

[3] This provision is also the basis for that portion of this Court's Order of August 21, 1974, which enjoined all persons from instituting or prosecuting any action against Gateway. Obviously, allowance of defendant's counterclaims would directly contradict that Order.

holders and to prevent prejudicial preferences. It is clear, and defendant does not contend to the contrary, that it could not, while the suspension is in effect, initiate an action as a plaintiff based on the claims it now seeks to assert as counterclaims. *See Commonwealth ex rel. Woodside v. Seaboard Mutual Casualty Co.*, 30 Pa. D. & C. 2d 705, 80 Dauph. 289 (1964); *Hirsch v. Bunker Hill Mutual Insurance Co.*, 8 Pa. D. & C. 2d 259, *aff'd* 389 Pa. 92, 132 A.2d 212 (1957). Finally, it is elementary law that a counterclaim is in the nature of an independent action by the defendant, deferred until such time as the defendant is brought into court and is to be regarded as if it were a separate action. *Topelski v. Universal South Side Autos, Inc.*, 407 Pa. 339, 180 A.2d 414 (1962); *Everson v. Fry*, 72 Pa. 326 (1872). Consequently, we can only view the defendant's assertion of these counterclaims as within the meaning of the term "action at law or equity" in Section 502, the commencement or prosecution of which is prohibited thereby. A contrary interpretation would totally frustrate the purpose of that Section and allow defendant to do indirectly what it clearly cannot do directly.[4]

Defendant also argues that even if it cannot recover the full amount it seeks in its counterclaims, the Court should, in this suit, decide the validity of the claims, allow the defendant to set off or recoup any recovery by the plaintiff and merely defer execution on the excess. On this point, it is sufficient to note that Section 502 not only prohibits execution but the prosecution of any action and the entering of judgment as well. *See Hirsch, supra.* Further, the de-

---

[4] Although defendant has not specifically raised the additional issue of waiver, we note that we do not believe that plaintiff's initiation of this action can be so construed since the immunity of Section 502 exists not for the benefit of the plaintiff per se but for the benefit of creditors and policyholders.

fendant assumes, as it indicates in its brief, that plaintiff's objections are limited to challenging the defendant's right to assert counterclaims *in excess* of the amount sought by plaintiff. We do not share this view. Rather, we hold that defendant may not assert or litigate in this suit, in part or in whole, any of the nine causes of action which it has set forth in its pleading entitled "Setoffs and/or Counterclaims." The defendant can, of course, assert the loan and the suretyship agreements as an affirmative defense to plaintiff's suit, in order to show that it was legally entitled to debit the balances of the various accounts and thus lawfully obtained the funds that plaintiff now seeks. In this respect, the present pleadings pose a problem because defendant has pleaded the loan and the suretyship agreements under Count I of its "Setoffs and/or Counterclaims" and has merely incorporated these matters by reference in its new matter.[5] While we hold that all nine counts contained in defendant's pleading entitled "Setoffs and/or Counterclaims" are barred by Section 502 of the Act and must be stricken, we also recognize the defendant's clear right to defend this suit on the basis of the loan and suretyship agreements. Consequently, we shall structure an order which will preserve this right.

Plaintiff has raised three additional objections which require only brief comment. First, plaintiff objects to the heading on defendant's pleading which reads "Setoffs and/or Counterclaims" rather than simply "Counterclaims" as provided by Pa. R.C.P. No. 1031. Second, plaintiff objects to defendant's incorporation by reference, in Count II of its counterclaims, several pages of a proof of claim submitted in the

---

[5] Since they raised an affirmative defense, the existence of the loan and suretyship agreements would normally be pleaded as "new matter" pursuant to Pa. R.C.P. No. 1030.

Gateway liquidation proceedings. Third, plaintiff objects to a portion of defendant's new matter which incorporates by reference all of the allegations contained in defendant's counterclaims. All of these objections concern matters which, with the limited exception of Count I of the counterclaims, noted above, will necessarily be stricken in view of our sustaining the demurrer to the counterclaims and require no further consideration.

ORDER

Now, July 20, 1977, the plaintiff's preliminary objection in the nature of a demurrer to defendant's assertion of setoffs and/or counterclaims is sustained and said setoffs and/or counterclaims are hereby stricken; however, paragraphs 45-68 thereof, are preserved to the extent that they plead an affirmative defense to plaintiff's cause of action. All other preliminary objections raised by plaintiff are overruled. Plaintiff is granted leave to reply to defendant's new matter including paragraphs 45-68 referred to above within thirty (30) days of the date hereof.