594 A.2d 852

**STATE CORRECTIONAL INSTITUTION AT GRATERFORD, DEPARTMENT OF CORRECTIONS, Petitioner,**

v.

**Dennis BRUMFIELD, Respondent.**

Commonwealth Court of Pennsylvania,

Submitted on Briefs March 1, 1991.

Decided July 1, 1991.

Frederick C. Smith, Jr., for petitioner.

Harold D. Borek, for respondent.

Before DOYLE and BYER, JJ., and BARRY, Senior Judge.

DOYLE, Judge.

The State Correctional Institution at Graterford, Department of Corrections (Appointing Authority) appeals from an order of the State Civil Service Commission (Commission) which sustained the appeal of Dennis Brumfield from removal from his position as Corrections Officer 1, regular status, and ordered his return to duty in that position.

The pertinent facts are as follows: On January 30, 1989 Brumfield and another officer were sent to Chester County Prison to transport an inmate to the State Correctional Institution at Camp Hill. The two officers took the inmate to a holding cell to conduct a strip search and during the course of this search, the inmate became verbally abusive toward Brumfield.

After the strip search was completed, Brumfield attempted to handcuff the inmate. The inmate attempted to leave the room but was restrained by the second officer. Brumfield again attempted to handcuff the inmate but he forced

Brumfield's hand away and ran out of the cell. As the inmate exited the holding cell, the second officer grabbed the inmate's left arm and an officer from Chester County Prison grabbed the inmate's right arm. The two officers placed the inmate against the wall and held him there as Brumfield again attempted to handcuff the inmate.

After the inmate was against the wall, he continued to be verbally abusive and pushed Brumfield with his stomach. The inmate was also moving his hands making it difficult for Brumfield to handcuff him. Brumfield then handcuffed the inmate and placed a black box over the handcuffs.[1] As Brumfield attempted to place a chain through the black box and around the inmate's waist, the inmate butted Brumfield with his head. As Brumfield attempted a second time to get the chain around the inmate's waist, he again "head butted" Brumfield. Brumfield, with an open hand, pushed the inmate against the wall causing him to fall down. Brumfield and the second officer picked up the inmate and Brumfield finished placing the chain on the inmate. Brumfield and the second officer then removed the inmate to the transporting vehicle and proceeded to the facility at Camp Hill.

By written notice dated March 9, 1989, the Appointing Authority advised Brumfield that he was to be suspended for a thirty (30) day period[2] effective March 14, 1989 for violations of the Appointing Authority's Code of Ethics arising from the January 30, 1989 incident. The Appointing Authority alleged the violations occurred in the following manner:

> Section B–1 You acknowledged using profane and discriminatory language to an inmate. Witness report [sic]

1. A black box is a security device, designed to prevent the prisoner from opening the handcuffs with a concealed handcuff key.

2. Section 803 of the Civil Service Act, Act of August 5, 1941, P.L. 752, *as amended,* 71 P.S. § 741.803, provides: "An appointing authority may for good cause suspend without pay for disciplinary purposes an employe holding a position in the classified service. Such suspension shall not exceed in the aggregate thirty working days in one calendar year."

you used brutal treatment toward the inmate. Section B–2 Excessive force was used to include violence and intimidation. Section B–8 You improperly disposed of inmate property and a state coat. Section B–14 You failed to wear your I.D. Card as required.

On March 13, 1989, the District Attorney of Chester County charged Brumfield in Magisterial District 15–3–04 in the 15th Judicial District (Chester County) with a misdemeanor in the second degree (assault) and a summary offense (harassment).[3]

Brumfield received written notice dated March 20, 1989 (after his thirty-day suspension had begun on March 14th) advising him that because of his arrest and because that arrest was for criminal conduct relating to his employment, his thirty-day disciplinary suspension was rescinded and that he was being placed on suspension pending further investigation.[4] The notice further provided that "this action [was] taken in accordance with and as required by the Governor's Code of Conduct."

Brumfield then received written notice dated April 19, 1989, informing him of his removal, effective April 21, 1989. The notice stated:

It has come to our attention that those [criminal] charges [arrest warrant] have been squashed [sic], however, other criminal charges are in the process of being filed.

Notwithstanding the final outcome of the criminal charges, the violation of the Department of Corrections,

3. The criminal complaint and process were quashed by order of the Court of Common Pleas of Chester County on April 13, 1989 because process had been incorrectly issued in the form of an arrest warrant. Process was reissued by summons on June 6, 1989.

4. Suspension pending investigation for the purpose of ascertaining an employe's fitness for continued employment is authorized by 4 Pa. Code § 101.21(b). Section 102.21(c) further provides that no single suspension may extend for a period in excess of thirty working days. The Appointing Authority's letter of March 20, 1989 stated: "Your suspension will begin on the date of your arrest, March 13, 1989 and continues for a period not to exceed thirty (30) days." Brumfield did not receive an "indefinite suspension" as indicated by the Commission's finding of fact #2 and conclusion of law #2 if by "indefinite" the Commission meant more than thirty days.

Code of Ethics, Section B, Numbers 1, 2, 8, and 14, constitutes gross misconduct and has destroyed our belief in your future effectiveness as a Correctional Officer.

On April 8, 1989 Brumfield appealed his suspension pending investigation and on April 24, 1989, he appealed his removal.

On July 25, 1990, the Commission issued its adjudication and made the following pertinent conclusions of law:

1. The appointing authority has presented credible evidence establishing good cause for suspension under Section 803 of the Civil Service Act, as amended.

2. The appointing authority failed to present evidence sufficient to establish the need to impose an indefinite suspension under Section 803 of the Civil Service Act, as amended.[5]

3. The appointing authority failed to present evidence sufficient to establish the need to impose a removal under Section 807 of the Civil Service Act, as amended.[6]

The Commission directed Brumfield's reinstatement with back pay to April 21, 1989. Appeal by the Appointing Authority to this Court followed.

■ We review this appeal keeping in mind that our scope of review is limited to determining whether an error of law was committed, constitutional rights were violated, or whether substantial evidence supports the Commission's necessary findings. *Ettinger v. State Civil Service Commission*, 114 Pa.Commonwealth Ct. 594, 539 A.2d 67 (1988).

The Appointing Authority first argues that nothing in the Civil Service Act or its attendant regulations prohibits it from rescinding a personnel action it has taken when new information is received which so substantially alters the circumstances of the case that it is necessary to reconsider its initial determination. The Appointing Authority further

---

5. *See* footnote 4.

6. Section 807 of the Civil Service Act, 71 P.S. § 741.807, provides: "No regular employe in the classified service shall be removed except for just cause."

argues that Brumfield's subsequent arrest on criminal charges arising from the incident represented such a radical change in circumstances that it more than justified the rescission of the disciplinary suspension and the imposition of a suspension pending investigation.

The Commission first determined that the conversion of a disciplinary suspension to a suspension pending investigation *could* be necessitated based upon after-discovered information. The Commission concluded, however, that in this case, the Appointing Authority's sole justification for the modification of its personnel action, the arrest of Brumfield, was insufficient.

■ We agree with the Commission that an Appointing Authority is not bound by its initial disciplinary action where additional information comes to light during the course of that action.[7] We hold, however, that the Commission erred in concluding that Brumfield's arrest for a misdemeanor of the second degree (assault) and a summary offense (harassment), charges which relate directly to Brumfield's employment, did not provide sufficient justification for the conversion of its personnel action from a disciplinary suspension to a suspension pending investigation.

■ The Commission's error however, is harmless. The original suspension was imposed for a thirty day period which began on March 14, 1989 and extended to April 20, 1989. This suspension was "converted" on March 20, 1989 to a suspension pending investigation which began on the date of Brumfield's arrest, March 13, 1989, and continued for a period not to exceed thirty days. Thus, the conversion imposed no greater penalty on Brumfield and did not violate Section 803 of the Civil Service Act, 71 P.S. § 741.803, which limits the amount of time an employee may be

7. We do not here discuss the effect of after-discovered evidence when a disciplinary suspension has been fully served.

suspended in a calendar year to thirty working days.[8]

Whether an Appointing Authority imposes a disciplinary suspension or a suspension pending investigation, if it decides to remove an employee at the conclusion of the disciplinary action, it must comply with the standard articulated in Section 807 of the Civil Service Act, 71 P.S. § 741.-807, which provides that such removal may be imposed only for just cause.[9]

Second, the Appointing Authority argues that Brumfield's arrest on charges arising directly out of an incident occurring while he was in the scope of his employment provided a sufficient basis for his removal. The Appointing Authority further argues that once Brumfield's attorney stipulated before the Commission that Brumfield had pled guilty to a charge of criminal harassment the Governor's Code of Conduct, 4 Pa.Code § 7.173, mandated Brumfield's removal, and hence, the Appointing Authority's motion to dismiss should have been granted by the Commission. Section 7.173 provides:

As soon as practicable after an employe has been formally charged with criminal conduct related to his employment with the Commonwealth or which constitutes a felony, the employee shall be suspended without pay. If the charge results in conviction in a court of law, the employee shall be terminated.

*Id.*

The Governor's Code of Conduct is not a statute but is an executive order codified in the Pennsylvania Code; it does not take precedence over statutory provisions to the

8. We are unclear as to what the Appointing Authority gained by converting the disciplinary suspension to a suspension pending investigation. Perhaps it felt obligated to cite to and rely on the specific provision in the Governor's Code of Conduct.

9. Neither good cause for suspension nor just cause for removal is statutorily defined. Both are judicially defined as relating to one's competency and ability to perform his or her job duties. *Cf. McCain v. Department of Education,* 71 Pa.Commonwealth Ct. 165, 454 A.2d 667 (1983) (suspension); *Doerr v. Pennsylvania Liquor Control Board,* 88 Pa.Commonwealth Ct. 610, 491 A.2d 299 (1985) (removal).

contrary. *Aiello v. Department of Environmental Resources*, 122 Pa.Commonwealth Ct. 216, 551 A.2d 664 (1988). The Commission rejected the Appointing Authority's assertion that Brumfield's removal was required by the Governor's Code of Conduct. Instead, the Commission correctly concluded that, Section 807 was the applicable law and reviewed the merits of the case under this standard.

■■■ We note, of course, that the Appointing Authority has the burden of proof to show just cause for removal. *Doerr*. Furthermore, whether the facts as found constitute just cause for removal is a question of law. *Department of Community Affairs v. Averette*, 104 Pa.Commonwealth Ct. 260, 521 A.2d 534 (1987).

■■■ In its adjudication, the Commission found sufficient evidence to support the charge that Brumfield had used profane and discriminatory language toward the inmate in violation of Section B-1 of the Appointing Authority's Code of Ethics. The Commission, however, found no violation of Section B-2 (use of excessive force); it found credible Brumfield's testimony that the inmate "head butted" him and that he struck the inmate in order to prevent the inmate from again "head butting" him. The Commission also found that the violation of Section B-8 (improperly disposing of inmate property and a state coat) was, at best, de minimus and that there was no evidence presented by the Appointing Authority to support the alleged violation of Section B-14 (failure to wear an identification card).

In *Omelchenko v. Housing Authority of the County of Lebanon*, 58 Pa.Commonwealth Ct. 494, 428 A.2d 274 (1981), this Court articulated the authority of the Commission in reviewing a disciplinary action imposed by an appointing authority. There, the Court held:

> If the charges on which a removal is based relate to the merits of the employee's work performance and if the charges are supported by the Commission's own findings, the Commission must uphold the appointing authority's disciplinary action. Only if the charges are not made out,

may the Commission modify the appointing authority's action by reinstating the employee—with or without back pay.

*Id.,* 58 Pa.Commonwealth Ct. at 497, 428 A.2d at 275–76.

Here the Commission found that only one of the four charges against Brumfield was supported by substantial evidence and that another charge was at most de minimis. Therefore, under *Omelchenko,* it had the authority to vacate the removal imposed by the Appointing Authority.

■ Finally, the Appointing Authority argues that Brumfield's admission that he had been arrested on criminal charges arising directly from his employment and his subsequent plea of guilty to the charge of harassment established as a matter of law that there was just cause to remove him.

In *Salvati v. Berks County Board of Assistance,* 81 Pa.Commonwealth Ct. 629, 474 A.2d 399 (1984), this Court considered the question of whether an arrest can constitute good cause for suspension and concluded that an arrest is not per se good cause but could properly be considered by the appointing authority. In *Salvati,* an arrest on seven charges of possession and delivery of amphetamines and marijuana and criminal conspiracy, some of which charges constituted felonies, was held to be good cause for suspension because it tended to bring the appointing authority into disrepute. *Cf. Lyle v. Department of Environmental Resources,* 83 Pa.Commonwealth Ct. 101, 477 A.2d 897 (1984), (on the facts of the case, an arrest for charges relating to employment duties did not constitute just cause for removal within the meaning of the law.)

In the instant case, the Commission found that, unlike in *Salvati,* there was no evidence of any impact upon Brumfield's employment caused by his arrest. The Commission determined that the arrest was not, therefore, grounds for

Brumfield's removal and we find no error in this conclusion.[10]

Based on the above discussion, we affirm the order of the Commission.

## ORDER

NOW, July 1, 1991, the order of the State Civil Service Commission in the above-captioned matter is affirmed.

10. To the extent that the Appointing Authority argues that Brumfield's plea of guilty on *November 30, 1989* establishes just cause for his removal effective *April 21, 1989*, we hold as a matter of law that just cause must exist at the time of the personnel action and subsequent events are generally legally irrelevant to that determination.