**NEW FOUNDATIONS, INC., Petitioner**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF GENERAL SERVICES, Respondent.**

Commonwealth Court of Pennsylvania.

Decided Nov. 7, 2005.
Publication Ordered March 3, 2006.

Daniel F. Schranghamer, Williamsport, for petitioner.

Mary Benefield Seiverling and Linda C. Barrett, Harrisburg, for respondent.

OPINION BY President Judge COLINS.

## OPINION AND ORDER

New Foundations, Inc. is a nonprofit corporation seeking injunctive relief from this Court to compel the Pennsylvania Department of General Services (DGS) to proceed to settlement and closing on a parcel of real estate located at 229 Arch Street in Philadelphia concerning which DGS and New Foundations entered an Agreement of Sale (Agreement). New Foundations' Petition for Review, filed in our original jurisdiction, is based upon the assertion that monetary damages will not provide sufficient or satisfactory relief.[1]

DGS filed preliminary objections to the Petition for Review asserting that the Pennsylvania Board of Claims has exclu-

---

1. New Foundations has also filed a motion for enforcement regarding an alleged settlement concerning the property at issue.

sive jurisdiction over this dispute, and that there is no legal authority upon which this Court could compel DGS to perform under the terms of the Agreement of Sale. DGS requests that the Court either dismiss the Petition for Review or transfer the matter to the Board of Claims. Following this Court's order scheduling the argument on the preliminary objections, and before argument occurred, New Foundations also filed a Motion to Amend the Petition for Review. We will consider both the motion to amend and the preliminary objections.

## 1. Motion to Amend

New Foundations' Motion to Amend is apparently responsive to discussion contained in DGS's memorandum in support of its preliminary objections. Therein, DGS anticipates that New Foundations might fear that DGS would attempt to sell the property to another party while this matter is pending. Accordingly, the proposed First Amended Petition for Review seeks injunctive relief from this Court prohibiting DGS from taking such action. Under Pa. R.C.P. No. 126, courts must liberally construe and apply the rules. Where a party seeks to amend a complaint after the filing of preliminary objections, they may do so as a matter of course within twenty days after being served the preliminary objections, Pa. R.C.P. No. 1028(c)(1). However, when a party does not file an amended complaint, or in this case an amended petition for review within the twenty-day period, Pa. R.C.P. No. 1033 allows a moving party to amend the petition for review where opposing parties agree to the amendment, or where granted by leave of court.

In this case, DGS has responded to the request with an objection. Accordingly, we must consider whether to grant the motion as a matter within our discretion. One element courts may consider in reaching a decision on a request to amend is whether the amendment will cause prejudice to the opposing party. DGS has not suggested that it will be prejudiced by an amendment. However, DGS points out that where an amendment to a petition for review is against a positive rule of law, courts may reject the motion to amend, because granting the motion would result in a waste of judicial resources. *Tanner v. Allstate Insurance Co.*, 321 Pa.Super. 132, 467 A.2d 1164, 1167 (1983).

As that court noted, when an amendment is against a positive rule of law, allowing the amendment would be futile and result in a waste of judicial resources and those of the opposing party. *Id.* In *Tanner*, the Court concluded that new case law—that could be applied retroactively to the facts and cause of action before the court—precluded recovery. In analyzing this question, we believe an evaluation of the underlying claims will facilitate our review. Accordingly, before deciding the motion to amend, we will first review the preliminary objections.

## 2. Preliminary Objections

As noted at the outset, New Foundations' original petition for review seeks injunctive relief compelling DGS to proceed to settlement and closing on the Arch Street property described in the Agreement for Sale.

DGS asserts that the Commonwealth Procurement Code (Code), 62 Pa.C.S. §§ 101–4509, vests with the Board jurisdiction over claims arising from a contract involving real property interests in which the Commonwealth is the respondent. Section 1724(a) of the Code, 62 Pa.C.S. § 1724(a), provides in pertinent part:

(a) **Exclusive jurisdiction.**—The board shall have exclusive jurisdiction to arbitrate claims arising from all of the following:

(1) **Unless otherwise provided by law,** a contract entered into by a Commonwealth agency involving real property interests in which the Commonwealth agency is the respondent.

(Emphasis added.) New Foundations' claim is against a Commonwealth agency—DGS—and involves real estate. Accordingly, the claim is one that does invoke the Board's jurisdiction. However, New Foundations, relying upon the highlighted phrase "unless otherwise provided by law," argues that another law is applicable in this case and provides for jurisdiction with a tribunal other than the Board.

New Foundations points out that DGS entered the Agreement of Sale pursuant to Section 2405–A(5) of the Administrative Code of 1929, Act of April 9, 1929, P.L. 177, added by Section 2405–A, Act of July 1, 1981, P.L. 143, *as amended,* 71 P.S. § 651.5(5). This provision, relating to the disposition by the Commonwealth of surplus land, provides that

The disposition of property shall be made upon such terms and conditions of sale as the department may prescribe. The sale of such real estate may be in the form of a lump sum purchase, installment purchase or lease purchase and may include use restrictions and reverter clauses. **The term and conditions of sale** and the form of purchase shall reflect current market conditions, shall afford maximum protection of Commonwealth assets and **shall prescribe procedures to be utilized in the event of default.**

(Emphasis added.) New Foundations argues that this provision of the Administrative Code, by directing the selling agency to prescribe the procedures to be used in the case of default, accomplishes two things: (1) divests the Board of its exclusive jurisdiction (by falling with the exception to Board jurisdiction under the Pro-

curement Code), and (2) eliminates the Commonwealth's sovereign immunity from an action seeking to compel it to perform an affirmative act.

■ The Agreement of Sale contains a provision relating to default upon which New Foundations relies in arguing that the Board does not have exclusive jurisdiction and that DGS does not enjoy sovereign immunity. That clause provides as follows:

Default of Seller: In the event that title to the Premises cannot be conveyed by Seller to Buyer at settlement in accordance with the requirements of this Agreement or closing does not occur as provided herein or Seller is otherwise in default in the performance of the provisions hereof, Buyer may either (a) disregard such default and perform this Agreement by accepting said title and the Premises in such condition as Seller can convey without abatement in price, or (b) rescind this Agreement and recover all sums paid on account of the Purchase Price without interest. In the latter event, there shall be absolutely no further liability or obligations by either party hereunder, and this Agreement shall be null and void.

We have two problems with New Foundations' perspective. First, Section 1724(a) of the Code provides that the Board has exclusive jurisdiction unless another law provides otherwise. Although the surplus property disposition provision of the Administrative Code does require agencies to include default provisions, the Administrative Code nowhere vests another tribunal than the Board with jurisdiction over real estate claims against a Commonwealth agency. We believe that although Section 1724 recognizes that the legislature could elect to vest another tribunal with jurisdiction, we must interpret it to mean that any such other law must

specifically vest jurisdiction in another tribunal. Thus, the Administrative Code would have had to have a provision specifically stating that claims involving such surplus property should be resolved before another, specific tribunal.

■ The Administrative Code does no such thing, and jurisdiction is not a subject over which parties may contractually bind themselves, unless the law provides. We find no such specific direction in the Administrative Code's provisions concerning surplus property disposition. Accordingly, we conclude that that law in no way alters the Procurement Code's vesting of exclusive jurisdiction with the Board of Claims over contractual disputes involving real estate against a Commonwealth agency such as DGS.

In *Vespaziani v. Dept. of Revenue*, 40 Pa.Cmwlth. 54, 396 A.2d 489 (1979), this Court concluded that the Board of Claims has jurisdiction over *all* contractual claims, regardless of the relief requested or the ability of the Board to grant the requested relief, and we find no suggestion that the holding in *Vespaziani* has been modified by later caselaw or statutory changes.

■ We further note that no contractual agreement can do what the legislature has not done with regard to the sovereign immunity Commonwealth agencies enjoy. Absent a legislative abrogation of immunity, no party may seek to obtain relief against the Commonwealth that private parties enjoy. In this case, New Foundations is seeking to compel a Commonwealth agency to perform under the terms of a contract, or essentially asking for specific performance. Because we would conclude that a Commonwealth agency on its own has no power to abrogate such immunity, DGS could not have bargained away its own immunity through the terms of the Agreement of Sale. Further, although the Administrative Code does direct agencies to include default provisions, the Code does not specifically abrogate immunity. Hence, we interpret the provision to mean that agencies must include default provisions, but does not empower agencies to include default provisions that result in an abrogation of sovereign immunity.

Accordingly, even if we were to conclude that the default provisions in the Agreement of Sale provided New Foundations with a right to obtain specific performance against a private entity, as to a Commonwealth agency such as DGS, any such contractual provision must be deemed nugatory.

Having found that New Foundations' claims do not belong in this Court, or would be unsuccessful even it we had jurisdiction, we will sustain the preliminary objections. Further, because the underlying claim has no merit, granting the motion to amend would not be a prudent exercise of the Court's discretion. Accordingly, we also deny New Foundations' motion to amend the petition for review.

### ORDER

AND NOW, this 7th day of November 2005, we enter the following order:

1. The motion to amend the petition for review is denied;

2. The preliminary objections filed by the Department of General Services are sustained;

3. The claims raised in the petition for review and the motion for enforcement of settlement are transferred to the Board of Claims.