**CHIRO–MED REVIEW COMPANY,**
Petitioner,

v.

**BUREAU OF WORKERS'
COMPENSATION,**
Respondent

**Bureau of Workers' Compensation,**
Petitioner,

v.

**Chiro–Med Review Company,**
Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 16, 2006.

Decided Sept. 28, 2006.

Michael J. Plank, Harrisburg, for petitioner.

Thomas J. Kuzma, Deputy Chief Counsel, Harrisburg, for respondent.

BEFORE: SMITH–RIBNER, Judge, and SIMPSON, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge SIMPSON.

The novel issue here is whether a Bureau of Workers' Compensation (Bureau) Hearing Officer may compensate a Utilization Review Organization (URO) for the Bureau's improper revocation of authorization to conduct utilization reviews. Chiro–Med Review Company (Petitioner) petitions for review of the Hearing Officer's order that sustained its appeal of a Bureau determination revoking its authorization to conduct utilization reviews. Petitioner contends the Hearing Officer erred by failing to compensate it for losses during the Bureau's improper revocation of its authorization.

In a cross-appeal, the Bureau alleges the Hearing Officer could not sustain Petitioner's appeal once he determined Petitioner violated the regulations upon which the

revocation was based. Additionally, in a motion to quash, the Bureau raises issues of jurisdiction, standing, and sovereign immunity.

Concluding sovereign immunity bars Petitioner's claim for additional relief, we quash Petitioner's appeal.[1] On the Bureau's appeal, we affirm the Hearing Officer's order.

## I. Background

In 1993, the General Assembly amended the Workers' Compensation Act (Act)[2] by adding provisions for implementing the utilization review process. The purpose of the amendments was to ensure injured employees receive medical treatment while also allowing employer challenges to the reasonableness and necessity of medical treatment for work-related injuries. *Chiro–Med Review Co. v. Bureau of Workers' Comp.*, 879 A.2d 373 (Pa.Cmwlth.2005) (*Chiro–Med I*). To implement the utilization review process, the Act allowed the Department of Labor and Industry (Department) to promulgate regulations authorizing UROs to perform utilization reviews. *See* Sections 306(f.1) and (f.2) of the Act;[3] *Chiro–Med I.*

Accordingly, the Department promulgated regulations setting forth the procedure for authorizing a URO as well as the procedure for the utilization review process itself. *See* 34 Pa.Code (Code) §§ 127.401–.670. Relevant to this appeal are those sections addressing the authorization, suspension, and revocation of a URO's ability to perform utilization reviews.

To perform utilization reviews, a URO must file an application with the Bureau. 34 Pa.Code §§ 127.651, 127.653. The Bureau has discretion to approve an application and, once authorized, a URO may perform utilization reviews for two years before seeking reauthorization. 34 Pa. Code § 127.654. If, however, the Bureau receives information the URO is not acting in accordance with the Act or its rules or regulations, the Bureau may suspend and ultimately revoke a URO's authorization. 34 Pa.Code §§ 127.668–.669. The Bureau's decision is not final; the regulations provide a URO the right of a new, or *de novo*, review before a hearing officer. 34 Pa. Code §§ 127.699(b)-.670(a).

Upon new review, the hearing officer is required to issue an adjudication that includes findings of fact, conclusions of law and the rationale for the decision. 34 Pa. Code § 127.670(d). The hearing officer's decision must inform the URO and the Bureau of their appeal rights to this Court. 34 Pa.Code § 127.670(e).

With this as background, we turn to the present matter.

## II. Revocation of Petitioner's Authorization

Prior to 2002, the Bureau approved Petitioner as a URO and, in July 2002, granted Petitioner's application for reauthorization for the period of August 1, 2002 through August 1, 2004. However, in August 2003, the Bureau suspended the assignment of new utilization reviews to Petitioner based on information it was not acting in accordance with the Bureau's regulations.

Upon completion of its investigation, the Bureau revoked Petitioner's authorization to conduct utilization reviews on the grounds Petitioner violated several of the Bureau's regulations. Petitioner appealed.

---

1. We may quash an appeal for any reason appearing on the record. Pa. R.A.P.1972(7).

2. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1041.1, 2501–2626.

3. *Added by* the Act of July 3, 1993, P.L. 190, 77 P.S. §§ 531(6) and 531.1(7).

The Hearing Officer conducted an evidentiary hearing and concluded the Bureau did not abuse its discretion by revoking Petitioner's authorization. On appeal, we determined the Bureau's regulations required the Hearing Officer to conduct a new review of the Bureau's decision, not a limited scope appellate review. *Chiro–Med I.* Accordingly, we vacated the Hearing Officer's decision and remanded for further proceedings based on the existing record. *Id.*

On remand, the Hearing Officer determined Petitioner violated Bureau regulations at 34 Pa.Code §§ 127.652(c) (pertaining to changes in contents of application); 127.657 (pertaining to local business offices); and 127.660(b) (pertaining to list of reviewers). Notwithstanding, the Hearing Officer concluded the violations were minor and, consequently, there was an insufficient basis upon which to revoke Petitioner's authorization. The Hearing Officer therefore sustained Petitioner's appeal. Notably, the Hearing Officer's order merely sustained Petitioner's appeal; it did not address any other remedy available to Petitioner or require the Bureau to take corrective measures.

Although it received no direction from the Hearing Officer as to details, the Bureau thereafter reissued Petitioner's authorization effective as of the date of the Hearing Officer's second determination (December 2005) through mid-October 2006. The 10–month period represents the amount of time remaining on Petitioner's 2002–04 authorization prior to the Bureau's revocation.

Both parties now appeal. In its appeal, Petitioner, who prevailed before the Hearing Officer at least to the extent of securing a reinstatement of its authorization, seeks an order directing the Bureau to forego its usual assignment process and to allot Petitioner additional utilization reviews. The purpose of these additional assignments would be to compensate Petitioner for income lost during the period of revocation. Alternatively, Petitioner requests a remand to the Hearing Officer for implementation of the same remedy. In response, the Bureau filed a motion to quash Petitioner's appeal, raising issues of jurisdiction, standing, and sovereign immunity.

■ The Bureau's appeal challenges the Hearing Officer's authority to sustain Petitioner's appeal.[4]

### III. Bureau's Motion to Quash

#### 2478 C.D.2005

Prior to reaching the merits of either appeal, we examine the Bureau's motion to quash. The Bureau contends this Court lacks jurisdiction to entertain Petitioner's appeal, Petitioner lacks standing to appeal, and, Petitioner's claims are barred by sovereign immunity. We address each argument in turn.

#### A. Jurisdiction

The Bureau first contends this Court lacks jurisdiction over Petitioner's appeal because the general nature of Petitioner's claim is one for damages, which we may not grant in our appellate jurisdiction. We conclude this Court enjoys jurisdiction to entertain the petition for review.

■ Subject matter jurisdiction relates to the competency of a court to hear

---

4. Our review of a state agency determination is limited to ascertaining whether the findings of fact were supported by substantial evidence, whether constitutional rights were violated, whether an error of law was committed, or whether the agency's practices and procedures were not followed. *Chiro–Med I; Laundry Owners Mut. Liability Ins. Ass'n v. Bureau of Workers' Comp.*, 853 A.2d 1130 (Pa.Cmwlth.2004).

and determine controversies of the general nature of the matter involved. *Fraisar v. Gillis,* 892 A.2d 74 (Pa.Cmwlth.2006). "[T]he test for determining whether a court has jurisdiction of the subject matter is the competency of the court to determine controversies of the *general class* to which the case presented for its consideration belongs." *Heath v. Workers' Comp. Appeal Bd. (Pa. Bd. of Probation & Parole),* 580 Pa. 174, 181, 860 A.2d 25, 29 (2004) (emphasis in original; citation omitted). "In other words, we determine whether 'the court [has] power to enter upon the inquiry, *not whether it might ultimately decide that it [is] unable to grant the relief sought in the particular case.*'" *Id.* (Emphasis added.)

■ Pursuant to 42 Pa.C.S. § 763(a), this Court enjoys exclusive jurisdiction to hear appeals from government agency determinations. Even where this Court does not provide Petitioner a remedy, *see generally Northampton Convalescent Center v. Department of Public Welfare,* 550 Pa. 167, 703 A.2d 1034 (1997) (an appellate court cannot award relief which could not be awarded by a lower tribunal or agency), we may determine whether any remedy exists under the Act. Accordingly, we have subject matter jurisdiction to entertain Petitioner's appeal. 42 Pa.C.S. § 763(a).

## B. Standing

■ Next, the Bureau contends Petitioner lacks standing to appeal because it was not aggrieved by the Hearing Officer's determination. Pursuant to 2 Pa.C.S. § 702, any person "aggrieved" by a Commonwealth agency adjudication who has a direct interest in the adjudication may appeal to a court vested with jurisdiction to hear such appeals. *See also* Pa. R.A.P. 501 ("any party aggrieved by an appealable order ... may appeal therefrom"). Whether a party has standing to appeal is

determined on a case-by-case basis and, if a person is determined aggrieved, he has standing. *Robb v. Workers' Comp. Appeal Bd. (Dep't of Pub. Welfare),* 718 A.2d 875 (Pa.Cmwlth.1998).

■ Courts allow a party to appeal where the remedy awarded is claimed to be insufficient. *See generally Marsh v. Hanley,* 856 A.2d 138 (Pa.Super.2004) (plaintiff's appeal permitted where jury did not award damages for compensable bodily injuries); *Pittsburgh Constr. Co. v. Griffith,* 834 A.2d 572 (Pa.Super.2003), *pet. for allowance of appeal denied,* 578 Pa. 701, 852 A.2d 313 (2004) (prevailing party had standing to cross-appeal where court disregarded contract provision setting interest rate); *Robb; see also Hercules Inc. v. AIU Ins. Co.,* 783 A.2d 1275 (Del.2000) (party is aggrieved by favorable judgment if it did not receive all relief requested).

Our decision in *Robb* is instructive. There, employer filed a petition for physical examination. Employer filed for supersedeas, which the workers' compensation judge (WCJ) granted. At a hearing on the petition, claimant's counsel admitted employer was entitled to a physical examination, but argued the WCJ improperly suspended claimant's benefits because employer only filed a petition for examination. Ultimately, the parties agreed once claimant submitted to an examination, benefits would be reinstated. Claimant complied, and, at employer's request, the WCJ entered an order indicating employer withdrew the petition. However, the WCJ's order failed to reinstate claimant's benefits.

Claimant appealed to the Workers' Compensation Appeal Board (Board), which concluded claimant lacked standing. We reversed the Board's order and determined claimant had standing because the WCJ's order effectively denied claimant benefits. We held that "[a]ny other hold-

ing to the contrary would produce the grossly inequitable result of essentially leaving [c]laimant with a right without a remedy...." *Robb,* 718 A.2d at 880.

■ Here, Petitioner complains the Hearing Officer denied it a meaningful remedy to compensate it for revenue lost during the period the Bureau revoked its authorization until it was reissued, a period of 25½ months. In its proposed findings of fact, Petitioner requested the assignment of additional utilization reviews; however, the Hearing Officer failed to address Petitioner's request. As in *Robb,* Petitioner's appeal is the only means by which it may challenge the Hearing Officer's failure to compensate it for the Bureau's actions. Thus, although Petitioner "prevailed" below, we conclude it has standing because it did not receive all the relief it requested. *Marsh; Pittsburgh Constr. Co.; Robb; Hercules, Inc.*

## C. Sovereign Immunity

Finally, the Bureau contends it is immune from Petitioner's claims pursuant to 1 Pa.C.S. § 2310, which reaffirmed the sovereign immunity provision found in Article 1, Section 11, of the Pennsylvania Constitution.[5] 1 Pa.C.S. § 2310 provides, in part, the "Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity." In opposition, Petitioner argues sovereign immunity is not applicable because the proceedings before us result from a petition for review, not a civil action for damages.

We failed to discover any case law addressing a Commonwealth agency's right to assert sovereign immunity on a petition for review of an agency determination, and neither the Bureau nor Petitioner provides such authority. We observe, however, sovereign immunity is non-waivable and may be asserted at any time. *Williams v. Phila. Housing Auth.,* 873 A.2d 81, 84 (Pa.Cmwlth.2005) ("defense of governmental immunity is an absolute unwaivable defense, not subject to any procedural device that could render the governmental agency liable beyond exceptions granted by legislature"); *Warnecki v. Se. Pa. Transp. Auth.,* 689 A.2d 1023 (Pa. Cmwlth.1997).

Moreover, our courts will not permit a party to do indirectly that which it cannot do directly. *Commonwealth ex rel. Sheppard v. Cent. Penn Nat'l Bank,* 31 Pa. Cmwlth. 190, 375 A.2d 874 (1977). As stated above, Commonwealth agencies enjoy immunity pursuant to the Pennsylvania Constitution, 1 Pa.C.S. § 2310, and 42 Pa. C.S. § 8521(a) (sovereign immunity generally). To impose liability on a Commonwealth party, the alleged negligent act must involve a cause of action that is recognized at common law or by statute, and the matter must fall within one of the exceptions to sovereign immunity listed in 42 Pa.C.S. § 8522(b). 42 Pa.C.S. § 8522; *Raker v. Pa. Dep't of Corr.,* 844 A.2d 659 (Pa.Cmwlth.2004), *pet. for allowance of appeal denied,* 580 Pa. 692, 859 A.2d 770 (2004).

Here, Petitioner's petition for review did not allege the Bureau negligently revoked its utilization review authorization and, consequently, it does not satisfy the first prong of 42 Pa.C.S. § 8522(a). *See Crockett v. Edinboro Univ.,* 811 A.2d 1094 (Pa.

---

5. PA. CONST. art. 1 § 11, provides in relevant part: "[s]uits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct."

Cmwlth.2002) (sovereign immunity barred action under the Unfair Trade Practices and Consumer Protection Law, Act of December 17, 1968, P.L. 1224, *as amended*, 73 P.S. §§ 201-1–9.3). Moreover, assuming Petitioner alleged the Bureau's actions were negligent, Petitioner's claim does not fall within any of the enumerated exceptions to sovereign immunity found in 42 Pa.C.S. § 8522(b).

Additionally, the Act is a legislative pronouncement, and any waiver of sovereign immunity must be specifically expressed. *See generally Powell v. Drumheller*, 539 Pa. 484, 653 A.2d 619 (1995) (a party may only bring an action against a Commonwealth agency where the Commonwealth expressly waived sovereign immunity); *New Founds. Inc. v. Commonwealth of Pa., Dep't of Gen. Servs.*, 893 A.2d 826, 830 (Pa.Cmwlth.2006) ("[a]bsent a legislative abrogation of immunity, no party may seek to obtain relief against [a Commonwealth agency] that private parties enjoy.").[6] Here, nothing in the Act suggests the General Assembly intended to waive sovereign immunity.

Furthermore, Petitioner's request for additional utilization review assignments rather than monetary damages does not command a different result. In *Fawber v. Cohen*, 516 Pa. 352, 532 A.2d 429 (1987) the Supreme Court explained:

> [s]uits which seek to compel *affirmative action on the part of state officials* or to obtain money damages or to recover property from the Commonwealth are within the rule of immunity; suits which simply seek to restrain state officials from performing affirmative acts are not within the rule of immunity. (Citation omitted; emphasis deleted.)

In *Stackhouse v. Pennsylvania State Police*, 892 A.2d 54 (Pa.Cmwlth.2006), *pet. for allowance of appeal denied,* —— Pa. ——, 903 A.2d 539 (2006), we examined the language of requested relief in determining whether sovereign immunity barred the plaintiff's claims against the Pennsylvania State Police (PSP). There, the plaintiff filed an action for declaratory and injunctive relief as well as for monetary damages allegedly resulting from a PSP investigation. The trial court dismissed the plaintiff's complaint on the grounds of sovereign immunity.

■ On appeal, we reviewed the language of plaintiff's request for injunctive relief and found it comprised requests for two distinct remedies: an order barring the PSP from using any information gathered during the investigation for any purpose; and, an order mandating the PSP to institute guidelines and policies relative to internal affair investigations. As to the plaintiff's first request, we reversed the trial court because such actions are not barred by sovereign immunity. *Id.; Bonsavage v. Borough of Warrior Run*, 676 A.2d 1330 (Pa.Cmwlth.1996). In reviewing the plaintiff's second request, however, we determined the claim was barred by sovereign immunity because the plaintiff sought to compel an affirmative action by the PSP, the implementation of guidelines and policies. Hence, the language of the relief request was determinative of whether sovereign immunity barred the plaintiff's claims.

Here, Petitioner seeks to compel a Commonwealth party to perform an affirmative task in a particular manner. Procedurally, Petitioner's request for relief reaches us through a petition for review. Nevertheless, it seeks an order mandating a specific remedy. Because sovereign immunity bars

---

**6.** For example, certain actions may be brought against the Commonwealth pursuant to Section 1702(b) of the Procurement Code, 62 Pa.C.S. § 1702(b).

Petitioner's direct claim for money damages, the relief sought in the petition for review, which is meant to provide financial compensation, is likewise barred. *Sheppard.* Accordingly, we quash Petitioner's appeal.[7]

## D. Denial of Remedy

As a result of our decision on the motion to quash, we do not decide Petitioner's central issue on the merits, that the Hearing Officer denied it a remedy to compensate for income lost during the extended period that its authorization was revoked.[8] We note, however, that after the Hearing Officer's decision on remand the Bureau took action which afforded some relief to Petitioner. Specifically, in an apparent attempt to return Petitioner to the position it enjoyed before revocation, the Bureau reinstated Petitioner's authorization for the unexpired term as of the time of revocation, and renewed assignments to it. This action is not currently before us for review.

## IV. Bureau's Appeal

### 2570 C.D.2005

We now turn to the Bureau's appeal, which raises issues as to the merits of the Hearing Officer's decision. Once the

Hearing Officer found Petitioner violated the applicable regulations, the Bureau asserts, he lacked authority to sustain Petitioner's appeal. Specifically, the Bureau contends the Hearing Officer was required to defer to the Bureau's discretion because the regulations permit revocation regardless of the degree of the violation and because our decision in *Chiro–Med I* does not authorize the Hearing Officer to ignore the regulations.

As previously noted, the Hearing Officer conducted a *de novo*, or new, review. *Chiro–Med I*; 34 Pa.Code § 127.670(d). Examining the concept of *de novo* review in *Millcreek Manor v. Department of Public Welfare*, 796 A.2d 1020, 1029 (Pa.Cmwlth. 2002), we explained:

> "De novo" review entails, as the term suggests, full consideration of the case anew as if it was not heard before and no decision had been previously rendered. The reviewing body is in effect substituted for the prior decision-maker and redecides the case. In conducting a hearing *de novo*, the tribunal hears the matter in its original, not appellate, jurisdiction. (Citations and footnote omitted.)

7. Because we conclude sovereign immunity bars Petitioner's claim, we will not address the Bureau's contention Petitioner waived its claim for damages because it failed to present testimony on the issue before the Hearing Officer.

8. Petitioner asserts the Hearing Officer's denial of a remedy is in violation of Article 1, § 11 of the Pennsylvania Constitution and of federal due process. Notably, Petitioner does not challenge the constitutionality of the Act or of the regulations.

Nevertheless, the Bureau afforded Petitioner procedural due process by providing it with notice and opportunity to be heard. *Flickinger v. Lebanon Sch. Dist.*, 898 A.2d 62 (Pa.Cmwlth.2006). More specifically, the Bureau held a pre-revocation telephone conference with Petitioner to address the results of its investigation, and notified Petitioner by letter of October 2003 of its revocation decision and the right to appeal to the Hearing Officer. R.R. 3a–4a. Also, Petitioner fully participated before the Hearing Officer.

Petitioner also claims the Hearing Officer denied it substantive due process by failing to provide an adequate remedy. Petitioner asserts a property right in its authorization. In addition, Petitioner claims a property right in lost income from assignments during the revocation. Recognizing Petitioner possesses a limited property right in its authorization, sovereign immunity nevertheless bars the specific relief sought here.

988 ■

Courts discuss whether a fact finder, conducting *de novo* review, may modify a penalty imposed by an administrative agency primarily in the areas of liquor license suspensions and various Department of Transportation (PennDOT) suspensions. Speaking through now Senior Judge Kelley, in *Department of Transportation, Bureau of Driver Licensing v. Fiore*, 138 Pa.Cmwlth. 596, 588 A.2d 1332 (1991), we examined the evolution of *de novo* review in driver's license suspensions and the fact finder's ability to modify the penalty imposed by PennDOT. In our examination, we noted that traditionally a trial court could not, on new review, modify an administrative agency's penalty unless the court made findings of fact and conclusions of law different from the agency. *See Dep't of Transp., Bureau of Traffic Safety v. Kobaly*, 477 Pa. 525, 384 A.2d 1213 (1978); *Dep't of Transp., Bureau of Motor Vehicles v. Century III Chevrolet, Inc.*, 151 Pa.Cmwlth. 32, 617 A.2d 43 (1992).

However, the Supreme Court revisited the traditional approach in *Adair v. Pennsylvania Liquor Control Board*, 519 Pa. 103, 546 A.2d 19 (1988). There, the statutory language allowing for appeal to common pleas provided the court could "sustain, reject, alter or modify the findings, conclusions and penalties" of the Liquor Control Board. *See* Former Section 471 of the Liquor Code.[9] Because of the expansive statutory language, the Court concluded common pleas could alter the Liquor Control Board's determination regardless of whether it made findings and conclusions materially different from those of the board.

Our decision in *Fiore* followed. Recognizing the limited application of *Adair*, we nevertheless determined that common

pleas, in conducting new review of license suspensions, can modify the penalty imposed by PennDOT where the record evidences PennDOT abused its discretion when selecting a range of possible penalties provided by statute.

■ Here, although the right of review to the Hearing Officer is provided by regulation rather than by statute, we conclude the Hearing Officer has authority to alter the Bureau's determination. Under the applicable regulation, the hearing officer is required to "issue a written adjudication ... [including] ... all relevant findings and conclusions, and [stating] the rationale for the decision." 34 Pa.Code § 127.670. Interestingly, although the Bureau's revocation letter identified the manner in which Petitioner violated the regulations, the Bureau made no specific findings of fact and conclusions of law. Moreover, the Bureau's letter was based on its investigation and did not result from an evidentiary hearing. Thus, the Hearing Officer's decision was the first pronouncement of facts and conclusions of law resulting from an evidentiary hearing relative to the Bureau's revocation of Petitioner's authorization.

Here, the Hearing Officer found, and the Bureau does not dispute, Petitioner's violations of the regulations were minor. Reviewing the matter anew, the Hearing Officer could properly conclude minor violations did not warrant revocation. *See generally State Corr. Inst. at Graterford, Dep't of Corr. v. Brumfield*, 141 Pa. Cmwlth. 43, 594 A.2d 852 (1991) (State Civil Service Commission could modify appointing authority's disciplinary measure where only one charge against employee was supported by substantial evidence and other charge was minor).

9. Act of April 12, 1951, P.L. 990, *as amended, formerly* 47 P.S. § 4-471. This language was deleted when Section 471 was reenacted and amended by the Act of June 29, 1987, P.L. 32.

In addition, the authority of the Hearing Officer to sustain Petitioner's appeal is necessarily implied by the appeal process. While the regulations do not expressly explain what outcomes can be achieved by the appeal process, at least two outcomes are obvious: the underlying adjudication is either affirmed or reversed. Therefore, the existence of an appeal process implies the authority in the reviewer to do something other than affirm the Bureau.

Accordingly, we affirm the Hearing Officer's order.[10]

### ORDER

AND NOW, this 28th day of September, 2006, it is hereby ordered Chiro–Med Review Company's Petition for Review, appearing at 2478 C.D.2005, is **QUASHED.** Further, the May 18, 2005 order of the Bureau of Workers' Compensation, appealed at 2570 C.D.2005, is **AFFIRMED.**

Judge SMITH–RIBNER, concurring and dissenting opinion.

I concur in the decision to quash the appeal of Chiro–Med Review Company (Petitioner). I dissent, however, from the majority's decision to affirm the order of the Bureau of Workers' Compensation Hearing Officer because of the clear error of law committed in this matter. The Hearing Officer reversed the Bureau's revocation of Petitioner's authority to perform utilization reviews despite finding that Petitioner violated certain Cost Containment Regulations, 34 Pa.Code §§ 127.1–127.755, governing Utilization Review Organiza-

tions (UROs). The majority affirms essentially because Petitioner's violations "were minor" and because the Hearing Officer had discretion to ignore the violations and only had the option of affirming or reversing the Bureau's revocation.

In *Chiro–Med Review Co. v. Bureau of Workers' Compensation,* 879 A.2d 373 (Pa. Cmwlth.2005) (*Chiro–Med* ), the Court vacated a prior decision of the Hearing Officer, which denied Petitioner's appeal from the Bureau's revocation of Petitioner's authorization to perform utilization reviews. The Court concluded that the Hearing Officer improperly reviewed the Bureau's revocation decision under an abuse of discretion standard rather than conducting a *de novo* hearing and issuing a proper decision based on the evidence. The Court relied on *Millcreek Manor v. Department of Public Welfare,* 796 A.2d 1020 (Pa. Cmwlth.2002), and *Lawson v. Pennsylvania Department of Public Welfare,* 744 A.2d 804 (Pa.Cmwlth.2000), to support its conclusion that the Hearing Officer conducted an appellate review of the Bureau's revocation decision rather than a proper de novo review. However, nowhere in *Chiro–Med* or in the cases it relied upon did the Court authorize the Hearing Officer in conducting his *de novo* review to ignore any violations that he found and to reject the Bureau's revocation. The regulations permit the Bureau to revoke a URO's authorization when the Bureau determines that the URO has violated the regulations. *See* 34 Pa.Code § 127.669.

---

10. After the parties appealed to this Court, Petitioner filed with the Department an Application for Attorney's Fees pursuant to the Act of December 13, 1982, P.L. 1127, *as amended,* 71 P.S. §§ 2031–35, commonly known as the Cost Act. The Hearing Officer denied and dismissed the Application for want of jurisdiction. On appeal, Petitioner failed to address the Application in its brief to this Court and,

therefore, the issue is waived. *AT & T v. Workers' Comp. Appeal Bd. (DiNapoli),* 816 A.2d 355 (Pa.Cmwlth.2003). Nevertheless, the Cost Act does not permit attorney's fees where the adjudication involved the grant, review, revocation or suspension of a license or registration. Section 2 of the Cost Act, 71 P.S. § 2032. Thus, in any event, Petitioner is not entitled to attorney's fees.

990 ■

The Hearing Officer credited the Bureau's witnesses and made the following findings regarding Petitioner's violations at page 12 of his decision:

51. This Hearing Officer finds that Chiro–Med has violated Regulations during the period August 1, 2002 to October 2, 2003 as follows:

a. Chiro–Med submitted six determinations in May and June of 2003 by reviewers that were not on Chiro–Med's panel of reviewers. Chiro–Med failed to report a change in the list of reviewers to the Bureau within 30 days of the change in violation of Regulation 127.660 and 127.652.

b. Chiro–Med was not open for business on August 15, 2003 in violation of Regulation 127.657.

c. Though this Hearing Officer finds that any changes in the fee schedule were motivated by principles of fairness and reasonableness, nevertheless, Chiro–Med's failure to notify the Bureau of a deviation in its fee schedule violated Regulation 127.652.

The regulations that Petitioner violated provide that any changes to information contained in a URO's application must be reported to the Bureau, Section 127.652; that a URO shall have its business office open within this Commonwealth at a minimum from 9 a.m. to 5 p.m. Monday through Friday, except holidays, Section 127.657; and that a URO shall have available by contract or otherwise the services of a sufficient number and specialty distribution of qualified physicians and other practitioner reviewers to ensure that the URO can perform reviews as required, and any changes in the URO's list of reviewers must be reported to the Bureau within 30 days of the change. Section 127.660. The majority does not specify the nature of the violations found or set forth the specific requirements of the regulations. It simply states that the Hearing Officer found the violations to be minor and that the Bureau did not dispute that fact.

Contrary to the majority's acquiescence in the unsupported conclusion that Petitioner's violations are de minimis and therefore worthy of avoiding sanction, I note that the Hearing Officer expressed concern over the fact that Petitioner did violate the regulations and that its conduct should not be condoned. Nevertheless, he decided that his response must be reasonable despite the violations and that an insufficient basis existed to revoke Petitioner's authorization. The Hearing Officer may not simply ignore the violations, and I agree with the Bureau that he may not disregard validly promulgated regulations and that the regulations "are not optional or graduated in importance, but instead apply equally upon the Hearing Officer, the Bureau and Chiro–Med." Bureau Brief, at 24.

The majority evidently disagrees that the Hearing Officer is bound by the Bureau's regulations just as Petitioner is bound by them. Also, without any authority whatsoever, the majority concludes that the Hearing Officer had the authority to alter the Bureau's revocation decision despite having found Petitioner's violation of the regulations. The majority finds it interesting that the Bureau made no specific findings of fact and conclusions of law and that its revocation letter was not based on an evidentiary hearing, although the majority offers no authority for its contention that a hearing was required before the Bureau could revoke the authorization. The regulations provide that the Bureau may revoke a URO's authorization upon "investigation and following a conference with the Chief of the Medical Cost Containment Division, if the Bureau determines that a URO ... has violated the requirements of the act or this chapter."

34 Pa.Code § 127.669. The Bureau followed the regulatory process.

The case law is quite clear. In *UGI Utilities, Inc. v. Unemployment Compensation Board of Review*, 776 A.2d 344 (Pa. Cmwlth.2001), this Court affirmed the dismissal of an appeal in an unemployment case because the appeal was not filed in the manner and within the time specified by Board regulations. The Court concluded that the applicable appeal regulations do not provide for "substantial compliance." It also observed that a court should defer to an agency's interpretation of its own regulation unless that interpretation is clearly erroneous and is inconsistent with the statute under which the regulation was promulgated.

In *Popowsky v. Pennsylvania Public Utility Commission*, 853 A.2d 1097, 1106–1107 (Pa.Cmwlth.2004), *appeal granted*, 582 Pa. 667, 868 A.2d 454 (2005), the Court cited *Teledyne Columbia–Summerill Carnegie v. Unemployment Compensation Board of Review*, 160 Pa.Cmwlth. 17, 634 A.2d 665 (1993), for the proposition that the PUC just "like any other agency, cannot ignore or fail to apply its own regulations, and those persons subject to the agency's regulation are also bound." Because the Hearing Officer here was bound by the Bureau's regulations, he was not authorized to ignore Petitioner's violations by dismissing them as *de minimis*. The Hearing Officer committed an error of law in this regard, and, as a result, his order should be reversed and the Bureau's revocation of Petitioner's authorization reinstated.